**UNITED STATES of America,**
**Plaintiff,**

v.

**DETREX CHEMICAL INDUSTRIES,**
**INC., Defendant.**

**Civ. A. No. C 74-259 Y.**

United States District Court,
N. D. Ohio, E. D.

May 8, 1975.

Frederick M. Coleman, U. S. Atty., Joseph A. Cipollone, Asst. U. S. Atty., Cleveland, Ohio, for plaintiff.

E. Terry Warren, Ashtabula, Ohio, James L. Malone, Reminger & Reminger, Cleveland, Ohio, Thomas H. Truitt and David R. Berz, Washington, D. C., for defendant.

## ORDER

CONTIE, District Judge.

Defendant has moved the Court to strike various allegations contained in the complaint. Upon consideration and for the reasons stated below, the complaint shall be dismissed with leave to amend.

This is an action pursuant to Section 309(d) of the Federal Water Pollution Control Act, as amended, 33 U.S.C. Section 1319(d), to collect civil money penalties for alleged violations of a National Pollutant Discharge Elimination System (hereinafter NPDES) permit and of an Order by the Environmental Protection Agency (hereinafter E.P.A.). Jurisdiction exists by virtue of 28 U.S.C. § 1345.

The facts, as alleged in the complaint, are as follows:

Defendant is a Michigan corporation. Defendant operated a chlorine-alkali plant and a fine chemical plant within the jurisdiction of this Court. The operation of said plants required the discharge of process water and non-contact cooling water from an outfall designated Outfall 001, and the discharge of only non-contact cooling water from Outfall 002. Said outfalls discharge into a ditch tributary of Lake Erie. Authority to discharge from these outfalls existed under a NPDES permit issued on August 23, 1973. Defendant operated under this permit until May 30, 1974.

On March 13, 1974, the E.P.A. issued Order No. EPA–V–74–W–11 (hereinafter referred to as the Order of March 13, 1974), superseding Order No. EPA–V–74–W–4, issued February 19, 1974. The Order of March 13, 1974 required defendant to comply with the daily maximum effluent limitations contained in special condition 1 a of its NPDES permit by May 7, 1974.

The complaint alleges seventy-eight (78) specific violations of the permit and the Order of March 13, 1974. The alleged violations occurred during a period extending from November 1, 1973 through May of 1974. The government seeks to collect penalties of $780,000.

The allegations which the defendant seeks to have stricken fall into two separate classes. The first class concerns the violations occurring prior to May 7, 1974. The second class concerns the multiple per day violations alleged. The Court will discuss each class separately.

The second class of allegations sought to be stricken, those concerning more than one violation per day, will be discussed first. Essentially, defendant urges that Section 309(d) of the Act, 33 U.S.C. § 1319(d), provides a maximum per day penalty regardless of the number of violations. Thus, the argument continues, all allegations of more than one violation per day must be stricken from the complaint.

Title 33, U.S.C. § 1319(d) provides:

"Any person who violates sections 1311, 1312, 1316, 1317, or 1318 of this title, or any permit condition or limitation implementing any of such sections in a permit issued under section 1342 of this title by the Administrator, or by a State, and any person who violates any order issued by the Administrator under subsection (a) of this section, shall be subject to a civil penalty not to exceed $10,000 *per day of such violation.*" (Emphasis supplied.)

The casebooks are full of discussions on statutory construction. However, it is clear that the touchstone of the instant inquiry must be the intent of Congress. Of course, the inquiry must begin with the statute itself, for there is "no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." United States v. American Trucking Associations, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940). However, in this case this avails little, for the relevant language gives rise to reasonable, but conflicting interpretations.

Thus, resolution of the instant issue requires examination of the statute and

all other available sources from which Congress' intention in enacting § 1319 can be inferred.

The purpose of the Act is rather evident. It is "to restore and maintain the chemical, physical, and biological integrity of the nation's waters." 33 U.S.C. § 1251(a). The goal of the Act is to eliminate by 1985 the discharge of pollutants into the nation's waterways. An interim goal is set by the Act for 1981. At the risk of over-simplifying the complex and comprehensive legislation under consideration, the 1972 amendments to the Act established a new mechanism for the effectuation of this purpose and these goals. Said mechanism is a "discharge control mechanism." S.Rep.No. 92–414, 92nd Cong., 2nd Sess., 1972 U.S. Code Cong. & Admin.News, pp. 3668, 3678. This mechanism operates through the establishment of effluent limitations and the permit system. Illegal discharge may result in the imposition of criminal penalties, 33 U.S.C. § 1319(c), or civil penalties, § 1319(d).

The legislative history of the Acts reveals Congressional concern over the apparent insufficiency of the penalties provided to encourage compliance prior to the 1972 amendments. See S.Rep.No. 92–414, 92nd Cong., 2nd Sess., 1972 U.S. Code Cong. & Admin.News, pp. 3668, 3730. The Senate Committee believed that if the Act's purposes were to be met, "the threat of sanctions must be real, and the enforcement provisions must be swift and direct." *id.* at 3731. Therefore the above mentioned criminal sanctions and civil penalties were added to the administrator's right to sue for an injunction.

▮ Initially, the Court notes that the Congress apparently knew how to prescribe a penalty for each violation if it chose to do so. Title 33 U.S.C. § 1321, which deals with discharge of oil or hazardous substances, clearly establishes a civil penalty of $5,000 "for each of-

fense." While this section is not exactly analogous to § 1319, it is clear that the relevant unit for penalty computation in § 1321 is "per offense", whereas the relevant unit established by § 1319 is "per day of such violation." This distinction in language infers that § 1319 establishes a unit different from a per violation unit, i. e., a per day unit. Thus, there is support within the Act to conclude that Congress intended a maximum of $10,000 civil penalty per day regardless of the number of violations occurring on that day.

There is a good deal of support within the legislative history of the 1972 Amendments to indicate that Congress intended a per day standard. For example, Representative Gubser commented on the enforcement provisions of the then proposed amendments during the House debate before the Committee of the Whole House on the State of the Union. He stated:

"Penalties for those who violate the act are provided up to *$10,000 per day* and criminal penalties of $2,500 to $25,000 per day and/or 1 year imprisonment are provided for." A Legislative History of the Water Pollution Control Act Amendments of 1972, Vol. 1, p. 663 (January, 1973)* (Emphasis supplied.)

The Conference Report refers to the civil penalties as applying "per day of violation". A Legislative History of the Water Pollution Control Act Amendments of 1972, Vol. 1, p. 315. Representative Hammerschmidt stated to the Committee of the Whole House that there is a "maximum civil penalty of $10,000 per day." *id.* at 404.

Furthermore, the Court notes that the criminal sanctions, both money penalty and imprisonment, are very real and substantial deterrents to the need for their application. Similarly, a $10,000.00 per day maximum civil penalty, regardless of the number of violations per day, is also

---

* This publication was prepared by the Environmental Policy Division of the Congressional Research Service of the Library of Congress; it was printed for the Committee of Public Works.

a substantial deterrent, as it imposes a very substantial economic burden on even the largest of companies. The Court concludes that a $10,000 per day civil penalty, regardless of the number of violations of § 1311, 1312, 1316, 1317, or 1318 of Title 33 or of any permit condition or limitation or of any order of the E.P.A. more than adequately effectuates the Congressional purpose of a "real" threat of sanction. 1972 U.S.Code Cong. & Admin.News, Vol. 2, p. 3731. The Court further concludes that while a $10,000 per violation per day penalty would also tend to effectuate the Congressional enforcement purpose, the truly devastating impact of such a construction on business is not what Congress intended. Such a rule would tend more towards confiscation than mere deterrence. Had Congress intended a per violation unit for computation of penalties, the Court is of the opinion that it would have more clearly expressed such an intent.

The Court concludes that 33 U.S.C. § 1319 provides a maximum of $10,000 per day civil money penalty for violations of the Act. However, this conclusion does not necessitate the striking of the allegations requested. At most, this ruling alters the prayer of the complaint.

The basis for defendant's contention regarding the first class of allegations sought to be stricken, i. e. allegations referring to all violations occurring prior to May 7, 1974, is that the E.P.A.'s Order either constitutes a waiver of the government's right to sue for civil penalties, or that said Order should estop the government from asserting the subject violations.

The Order of March 13, 1974, in essence, requires defendant to comply with the terms of its permit by May 7, 1974. Said Order was issued pursuant to the authority granted by § 309(a)(3) of the Act, 33 U.S.C. § 1319(a)(3), which provides as follows:

"(3) whenever on the basis of any information available to him the Administrator finds that any person is in violation of § 1311, 1312, 1316, 1317, or 1318 of this title, or is in violation of any permit condition or limitation implementing any of such sections in a permit issued under section 1342 of this title by him or [his] State, he shall issue an order requiring such person to comply with such section requirement, or he may bring a civil action in accordance with subsection (b) of this section."

Subsection (b) of § 1319 authorizes the Administrator to commence a civil action for "appropriate relief", which apparently includes both civil money penalties and permanent or temporary injunctions.

■ Defendant's argument that the Order of March 13, 1974 precludes this suit as to all violations occurring prior to May 7, 1974 is meritless. The language of § 1319(a)(3) does not establish mutually exclusive alternatives; rather Congress thereby sought to reduce the case load of the courts where administrative action would suffice to effectuate compliance. To rule otherwise, would reward violators of the Act by forgiving penalties incurred where the administrator has invoked this congressionally approved procedure, thereby effectively discouraging the utilization of said procedure. The Court does not believe that Congress intended either of these results, and thus concludes that neither a waiver or estoppel theory should be sustained. This conclusion is reinforced by an examination of the legislative history of the Act. Senate Report 92–414 contains in its discussion of Section 309 of the Act the following statement in regards to enforcement procedures:

"Abatement orders, penalty provisions, and rapid access to the Federal District Court should accomplish the objective of compliance." 90th Cong., 1st Sess. 1972, U.S.Code Cong. & Admin.News, at 3731.

This statement in conjunction with the Senate Committee's expressed concern over real and substantial as well as swift

and direct enforcement procedures, see 1972 U.S.Code Cong. & Admin.News, supra, at 3731, infers that Congress intended the administrator to have alternative enforcement procedures available.

Accordingly, the complaint is hereby dismissed with leave to amend the demand for money penalty within thirty (30) days of the date of this Order.

It is so ordered.