JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant Lora Elias ("Elias") appeals from the decision of the Cuyahoga County Court of Common Pleas which denied Elias's motion for directed verdict and subsequently her motion notwithstanding the verdict with regard to the counterclaim of defendant-appellee[1] Leonard Gammel ("Gammel") for conversion of his dental practice. Finding no error in the proceedings below, we affirm.
 {¶ 2} The following facts give rise to this appeal. Gammel, a dentist, owned and operated a dental practice in Cleveland, Ohio. In 1995, Gammel solicited two dentists to his practice to keep it running while he attended to a personal medical problem that he thought was temporary. Elias, along with another dentist, serviced Gammel's existing patients exclusively. Both dentists began work at Gammel's practice knowing there was a possibility that Gammel may have to sell his practice.
 {¶ 3} Sometime later, Gammel learned he would no longer be able to practice dentistry because of his medical condition. Gammel approached both dentists about buying his dental practice and office. Gammel and Elias began negotiating the sale of Gammel's dental practice and dental office. They agreed that Gammel's practice should be transferred January 1, 1997 and Elias would buy the practice and the building over the course of seven years.
 {¶ 4} As of April 1997, Elias had not presented documents or money to Gammel for the purchase of his building and practice as agreed. Gammel told Elias he wanted her out and that he would sell his business to someone else. Elias refused to leave and continued to treat Gammel's patients. Finally, after several encounters, in May 1997, Elias presented a written option agreement and $6,500 to Gammel to hold the practice and building available for purchase until June 1, allowing her time to obtain the proper paperwork. Another purchase price was agreed to by both parties; however, nothing was reduced to writing.
 {¶ 5} Elias continued to avoid the purchase of the practice and the building. In August, she moved out, without notice, taking a dental chair, a secretary's chair, a light, patient records, day sheets, ledgers, and funds belonging to Gammel. Elias subsequently set up a dental practice down the street using Gammel's telephone number. Gammel demanded his equipment and patient records back, but Elias refused.
 {¶ 6} In January 2002, Elias filed a cause of action against Gammel seeking recovery for monies owed under a theory of implied contract and conversion of checks, which had been made payable to Elias and cashed by Gammel. Gammel counterclaimed seeking damages for conversion of his dental practice including, but not limited to, equipment and patient records. The case proceeded to jury trial and at the close of Gammel's case, Elias moved for a directed verdict as to Gammel's conversion claim. The court denied the motion and sent the case to the jury. The jury returned a verdict in favor of Elias and against Gammel on the implied contract claim in the amount of $17,800. In addition, the jury returned a verdict in favor of Elias and against Gammel on her conversion claim in the amount of $3,018. Finally, the jury returned a verdict in favor of Gammel and against Elias on his claim for conversion in the amount of $64,461. No interrogatories were attached to the jury verdict forms. Elias moved for a judgment notwithstanding the verdict, and the court denied said motion.
 {¶ 7} Elias timely appeals the decisions of the trial court advancing three assignments of error for our review.
 {¶ 8} "I. The court erred in not granting a directed verdict on the defendant's conversion claim."
 {¶ 9} Elias appeals arguing that a "dental practice" is intangible property that cannot be converted or stolen. Furthermore, Elias argues that there is no evidence to support the value of said "practice." Finally, Elias alleges that no tangible objects were stolen and thus both motions were improperly denied.
 {¶ 10} A motion for directed verdict shall be granted when, construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to such party. Civ.R. 50(A); Crawford v.Halkovics (1982), 1 Ohio St.3d 184; The Limited Stores, Inc. v. PanAmerican World Airways, Inc. (1992), 65 Ohio St.3d 66. A directed verdict is appropriate where the opposing party has failed to adduce any evidence on the essential elements of the claim. Cooper v. Grace Baptist Church
(1992), 81 Ohio App.3d 728. The issue to be determined involves a test of the legal sufficiency of the evidence to allow the case to proceed to the jury, and it constitutes a question of law, not one of fact. Hargrove v.Tanner (1990), 66 Ohio App.3d 693. Accordingly, the courts are testing the legal sufficiency of the evidence, rather than its weight or the credibility of the witnesses. Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66. Since a directed verdict presents a question of law, an appellate court conducts a de novo review of the lower court's judgment.Howell v. Dayton Power and Light Co. (1995), 102 Ohio App.3d 6. Keetonv. Telemedia Co. of S. Ohio (1994), 98 Ohio App.3d 405.
 {¶ 11} In Tabar v. Charlie's Towing Serv., Inc. (1994),97 Ohio App.3d 423, this court set forth the requisite elements of conversion as follows:
 {¶ 12} "Conversion is the wrongful control or exercise of dominion over the property belonging to another inconsistent with or in denial of the rights of the owner. Bench Billboard Co. v. Columbus (1989),63 Ohio App.3d 421; Ohio Tel. Equip. Sales, Inc. v. Hadler Realty Co.
(1985), 24 Ohio App.3d 91. In order to prove the conversion of the property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner. Id. The measure of damages in a conversion action is the value of the converted property at the time it was converted. Brumm v. McDonald Co. Securities, Inc. (1992),78 Ohio App.3d 96."
 {¶ 13} In the instant case, Gammel pursued a theory that Elias converted his dental practice while she was" negotiating" with Gammel to buy his practice. Gammel stated that Elias stole his dental practice, including his patients, his telephone number, his equipment, his patient records, and funds, and set up shop down the street. Elias admitted to taking two dental chairs but claims they were hers. Elias admitted to taking approximately $8,000 in insurance checks belonging to Gammel. She admitted that Gammel demanded everything back and she refused to return the chairs and the money. She denied taking any charts, day sheets or ledgers.
 {¶ 14} Prior to trial, Gammel sold his dental office but still sought recovery for the loss of his dental practice. In closing statements, Gammel's attorney requested damages in the amount of $114,000 for the conversion of the "dental practice." A review of the record shows numerous figures and suggestions as to what each party owed the other. Nonetheless, the jury returned a verdict in favor of both Elias and Gammel awarding a sum of money to both; however, no interrogatories were attached to the jury verdict to indicate how they determined said amounts. Gammel argues that his "dental practice," like the dental equipment, is personal property which can be converted. Elias argues that a cause of action for conversion cannot be maintained because the dental practice was intangible and, furthermore, nothing tangible was taken. Therefore, the issue at bar is whether a dental practice can be converted.
 {¶ 15} The Supreme Court of Ohio in Zacchini v. Scripps-HowardBroadcasting Co., 47 Ohio St.2d 224, 227, stated: "Although the original rule at common law was that only tangible chattels could be converted, it is now generally held that intangible rights which are customarily merged in or identified with some document may also be converted. Examples include drafts, * * * bank passbooks, * * * and deeds." (Citations omitted.) "The distinguishing characteristic of conversion is the forced judicial sale of the chattel or right of which the owner has been wrongfully deprived." Id.
 {¶ 16} In Schafer v. RMS Realty (2000), 138 Ohio App.3d 244, 283, the Second Appellate District noted that "the Ohio Supreme Court has not rejected conversion as a potential cause of action for all intangible assets. * * * Furthermore, the court's comments indicate that it was concerned mainly with the difficulty in deciding exactly what had been taken, as a basis for assessing damages." In Wiltberger v. Davis (1996),110 Ohio App.3d 46, 55, the court addressed whether Wiltberger's cause of action for conversion was frivolous conduct and subject to an award of attorney's fees when Wiltberger alleged, inter alia, conversion of monies owed by Davis for commission. The trial court granted Davis's motion for summary judgment on the conversion claims, stating that an action for the conversion of money is not recognized "except where the money isspecifically identifiable." Id., citing the trial court's decision. (Emphasis added.) The appellate court stated that "[w]hile it appears that the general rule is that a conversion action is only appropriate where tangible, identifiable personal property is involved, we cannot say that the state of existing authority is such that an action for conversion was wholly unwarranted and could not be supported by a good faith argument." Id. (Emphasis in original.) Thus, the court agreed with the lower court's conclusion that the filing of a conversion claim for monies owed, though intangible, was in good faith and was not frivolous conduct. Id.
 {¶ 17} That being said, "we believe the correct approach is to analyze the particular type of intangible asset, to see if allowing a conversion claim makes senses." Schafer, 138 Ohio App.3d at 285. Under these facts and circumstances, we find that a dental practice, an intangible asset, can be converted. A dental practice includes, but is not limited to, good will, name, location, telephone number, years of practice, client base, and patient records. Professional practices are bought and sold every day. There is a distinct advantage to buying a professional practice that has already been established. Customers, clients, and patients routinely patronize the same business that they have always gone to even if it "changes hands."
 {¶ 18} Because of the alleged wrongful acts of Elias, Gammel lost his ability to sell his dental practice. Elias moved Gammel's "practice" down the street and essentially rendered his "practice" nonexistent. Elias accomplished this by dragging her feet during negotiations with Gammel, presenting a written option agreement and money to hold the practice and building available for her to purchase, and then leaving without a word. Elias started her practice down the street using Gammel's original telephone number; consequently, all of Gammel's patients were diverted to Elias's new office. Elias left Gammel without a practice to sell. We find these facts support a claim for conversion.
 {¶ 19} Furthermore, the damages were readily ascertainable because Gammel and Elias had negotiated a price for which she could buy the practice. Under these facts, there is no logical reason to preclude a claim for conversion.
 {¶ 20} Finally, we note that courts in other jurisdictions have allowed claims for conversion of assets more intangible than Gammel's dental practice. See, e.g., Schafer v. RMS Realty (2000),138 Ohio App.3d 244 (affirming judgment finding conversion of a partnership interest); Wellington Systems, Inc. v. Redding Group, Inc.
(1998), 49 Conn. App. 152 (summary judgment inappropriately granted where plaintiff alleged conversion of money, equipment, and contractual rights); Conant v. Karris (1987), 165 Ill. App.3d 783 (claim for conversion of confidential information); CBS, Inc. v. Garrod (1985),622 F. Supp. 532 (applying Florida law to allow conversion claim for intangible property interest in time, effort, and expense of making recordings); and In re Corbin (Fla.App. 1980), 391 So.2d 731 (conversion claim allowed for wrongful taking over of intangible interests in a business venture).
 {¶ 21} For these reasons, we find that the trial court did not err in denying Elias's motion for directed verdict. The first assignment of error is overruled.
 {¶ 22} "II. The court erred in not granting judgment notwithstanding the verdict as the verdict in favor of defendant is contrary to law and against the manifest weight of the evidence."
 {¶ 23} The standard for granting a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial pursuant to Civ.R. 50(B) is the same as that for granting a motion for a directed verdict pursuant to Civ.R. 50(A). Texler v. D.O. Summers Cleaners Shirt LaundryCo. (1998), 81 Ohio St.3d 677. Pursuant to Civ.R. 50(B), a party may move for judgment notwithstanding the verdict or, in the alternative, a motion for new trial regardless of whether the party has moved for a directed verdict. "If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment. If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence." Civ.R. 50(B). A movant may join a motion for a new trial with a motion for judgment notwithstanding the verdict, or the movant may pray for a new trial in the alternative. Id.
 {¶ 24} In determining whether a trial court's judgment is against the manifest weight of the evidence, we are guided by the principles stated in Arnett v. Midwestern Ent., Inc. (1994), 95 Ohio App.3d 429, 431, "that a judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence." Furthermore, the appellate court is guided by a presumption that the findings of the trial court are correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77.
 {¶ 25} The measure of damages in a conversion action is the value of the property at the time it was converted. Tabar v. Charlie's TowingServ., Inc. (1994), 97 Ohio App.3d 423, 428. An award of damages must be shown with a reasonable degree of certainty and in some manner other than mere speculation, conjecture, or surmise. Persky, Shapiro, Salim, Esper,Arnoff Nolfi Co., L.P.A. v. Guyuron (Dec. 14, 2000), Cuyahoga App. No. 77249. However, once a party has established a right to damages, that right will not be denied because the damages are incapable of being calculated with mathematical certainty. Pennant Moldings, Inc. v. C JTrucking Co. (1983), 11 Ohio App.3d 248.
 {¶ 26} In Landskroner v. Landskroner (2003), 145 Ohio App.3d 471,2003-Ohio-5077, this court affirmed the trial court's ruling dismissing plaintiff's conversion claim for monies plaintiff claimed were due him under an agreement, citing Wiltberger v. Davis (1996),110 Ohio App.3d 46, 55. This court stated that plaintiff's conversion claim was not identifiable, personal property.
 {¶ 27} In the instant case, unlike Landskroner, Gammel's dental practice is identifiable personal property in which the measure of damages can be readily ascertained. The record reveals numerous figures addressing the viability of the practice, the asking price, and the negotiated price between Gammel and Elias. In addition, there is testimony addressing the value of the equipment that Gammel alleged Elias stole. A judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.
 {¶ 28} The second assignment of error is overruled.
 {¶ 29} "III. Plaintiff was denied a fair trial when improper character evidence was offered by defendant."
 {¶ 30} The trial court has broad discretion in the admission or exclusion of relevant evidence at trial. State v. Combs (1991),62 Ohio St.3d 278; State v. Sage (1987), 31 Ohio St.3d 173. The determination of the admission or exclusion of evidence is within the sound discretion of the trial court and will not be reversed without an abuse of discretion. Id. "The term abuse of discretion connotes more than error of law or judgment. It implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Nielson v. Meeker (1996),112 Ohio App.3d 448, 450.
 {¶ 31} Civ.R. 61 provides that an error or defect in the proceeding which does not affect the substantial rights of the complaining party may be disregarded as harmless. Pursuant to this harmless error rule, the existence of error does not require reversal of a judgment unless the error is materially prejudicial to the complaining party. Fada v.Information Sys. Networks Corp. (1994), 98 Ohio App.3d 785.
 {¶ 32} Elias does not state how this alleged error was materially prejudicial. Furthermore, defense counsel, upon cross-examination, elicited the same testimony complained of on direct examination.
 {¶ 33} The third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J., and Calabrese, Jr., J., concur.
[1] Huntington Bank was dismissed without prejudice prior to trial and is not a party to this appeal.