[Cite as *McConnell v. Bare Label Prods., Inc.*, 2017-Ohio-9325.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| RICHARD McCONNELL, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2015-T-0053** |
| BARE LABEL PRODUCTIONS, INC., et al. | : | |
| Defendants, | : | |
| TAMMY SCHMITT, | : | |
| Intervening Defendant-Appellee | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2008 CV 00278.

Judgment: Modified, reversed, and remanded.

*Robert N. Farinacci,* 65 North Lake Street, Madison, OH 44057 (For Plaintiff-Appellant).

*Bruce M. Broyles,* 5815 Market Street, Suite 2, Youngstown, OH 44512 (For Intervening Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, Richard McConnell, appeals the Judgment Entry of the Trumbull County Court of Common Pleas, following this court's remand in *McConnell v. Bare Label Prods., Inc.*, 11th Dist. Trumbull No. 2013-T-0050, 2015-Ohio-1206. The issue before this court is whether a trial court must comply with the mandate of an

appellate court where the judgment is supported by a majority of judges hearing the cause. For the following reasons, the judgment of the lower court is modified and reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

{¶2} The underlying case, originally filed on January 24, 2008, involved claims against intervening defendant-appellee, Tammy Schmitt, for violation of R.C. 1701.37, interference with a business relationship, breach of a fiduciary duty, and punitive damages/attorney fees. The factual and procedural history of this case is set forth in *McConnell*, 2015-Ohio-1206.

{¶3} Following trial to the court, judgment was entered against Schmitt in the amount of $23,030 on April 9, 2013. McConnell appealed.

{¶4} After the case had been pending for twenty-three months on appeal, on March 31, 2015, this court issued the following Judgment Entry, constituting the mandate of this court: "The order of this court is that the judgment of the Trumbull County Court of Common Pleas is reversed and this cause is remanded for further proceedings consistent with the opinion." App.R. 27 ("[a] court of appeals may remand its * * * judgments * * * to the court below for further proceedings therein" and "[a] certified copy of the judgment shall constitute the mandate"). In accord with Section 3(B)(3), Article IV of the Ohio Constitution, this Judgment was rendered by two judges of this court – the second judge concurring in judgment only. *Id.* ("[a] majority of the judges hearing the cause shall be necessary to render a judgment"). The third judge concurred in part and dissented in part.

2

{¶5} Upon remand, the trial court determined that it was without "clear directive" as to how to proceed, as "the authored opinion was not joined by enough jurists to create a majority as to the body of its work."

{¶6} On April 28, 2015, the trial court entered judgment against Schmitt in the amount of $23,071 for lost profits of the business during the first six months of operation, $23,071 for lost profits during the remaining six months of McConnell's employment contract; and $1 for punitive damages.

{¶7} On May 26, 2015, McConnell filed a Notice of Appeal. On appeal, McConnell raises the following assignments of error:

{¶8} "[1.] The court erred to the prejudice of plaintiff in again finding that appellant was not entitled to an award of statutory forfeiture damages pursuant to R.C. 1701.94 contrary to the clear directives of the reviewing court."

{¶9} "[2.] The court erred to the prejudice of plaintiff in failing to include significant and primary revenue sources in its calculation of lost profits contrary to the clear directives of the reviewing court."

{¶10} "[3.] The court erred to the prejudice of plaintiff in failing to award lost profits beyond the term of the management agreement contrary to the clear directives of the reviewing court."

{¶11} "[4.] The trial court erred to the prejudice of appellant by failing to award as damages his percentage of ownership of Club Pink's property removed by the appellee just prior to sale and then returned immediately thereafter contrary to the clear directives of the reviewing court."

{¶12} "[5.] The trial court erred to the prejudice of appellant by failing to award attorneys fees to appellant and only awarding one dollar in punitive damages contrary to the clear directives of the reviewing court."

{¶13} In the first assignment of error, McConnell claims the trial court failed to comply with this court's mandate in the prior appeal to award statutory damages pursuant to R.C. 1701.94. We agree.

{¶14} On this issue in the prior appeal, the trial court had found in favor of Schmitt on McConnell's claim that she violated R.C. 1701.37(C), by failing to produce corporate records upon request. This court reversed and remanded with instructions for "the lower court * * * to either reinstate the December 26, 2012 Judgment [awarding McConnell statutory fines in the amount of $47,580 for violating 1701.37(C)], or, if it finds this amount to be in error, to recalculate the amount of statutory damages to which McConnell is entitled." *McConnell*, 2015-Ohio-1206, at ¶ 38.

{¶15} Instead of complying with this court's mandate, the trial court concluded that the determination that Schmitt had violated R.C. 1701.37(C) was against "the manifest weight of the direct evidence" and so would "not impose a statutory penalty." The court further stated that it could not "in good conscience simply revert to [the December 26, 2012 Judgment] as suggested by the author of the appellate decision."[1]

{¶16} It is well-established law that "an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." *Nolan v.*

---

1. The dissent states that there was "no evidence that Schmitt, as a corporate officer, was 'charged with' the duty to maintain the company's financial and corporate records." The dissent overlooks the fact that Schmitt was treasurer for both Bare Label Productions and Masury Real Estate, i.e., the chief financial officer for both corporations with responsibility for monitoring corporate finances and reporting to the organizations' members. The dissent also overlooks the fact that, after Schmitt "froze" McConnell out of the corporations, she was the corporations' only effective corporate officer.

*Nolan*, 11 Ohio St.3d 1, 462 N.E.2d 410 (1984), syllabus; *Calvaruso v. Calvaruso*, 9th Dist. Summit No. 21781, 2004-Ohio-1877, ¶ 30. "[T]he rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution" *Nolan* at 3; *State ex rel. Potain v. Mathews*, 59 Ohio St.2d 29, 32, 391 N.E. 343 (1979) ("[t]he [Ohio] Constitution does not grant to a court of common pleas jurisdiction to review a prior mandate of a court of appeals").

**{¶17}** It is equally well-established that "[a] judge shall comply with the *law*." (Emphasis sic.) Jud.Cond.R. 1.1; *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 10 ("[b]y refusing to comply with the mandate of an appellate court, respondent violated [a] basic judicial duty").

**{¶18}** The trial court justified the violation of its judicial duty on the grounds that "[t]he opinion from the Appellate Court was not a majority opinion," but, "[r]ather, it was authored by one jurist" while "[a]nother jurist concurred in the judgment only." In doing so, the court misconstrued what constituted this court's judgment and what constituted this court's opinion. The opinion is a "written statement explaining [the court's] decision in a given case." *Black's Law Dictionary* 1125 (8th Ed.2004). The court's opinion is distinct from its judgment which is "[a] court's final determination of the rights and obligations of the parties in a case." *Id.* at 858. The opinion in the 2015 *McConnell* appeal was unsupported by a majority of the judges, but the judgment did have the support of a majority of judges. The fact that the opinion lacked precedential value did not absolve the inferior court in the case from abiding by this court's judgment.

**{¶19}** The first assignment of error is with merit. The trial court's April 28, 2015 Judgment Entry is reversed with respect to the denial of statutory damages. Based on the record, judgment is entered in favor of McConnell in the amount of $47,580 on Count I of the Amended Complaint (Violation of O.R.C. §1701.37 by Defendant Schmitt).

**{¶20}** In the second and third assignments of error, McConnell challenges the trial court's award of lost profits on remand.

**{¶21}** In the prior appeal, this court held as follows with respect to lost profits:

> McConnell presented sufficient evidence of Club Pink's profitability to merit an award of lost profits beyond his seven-month period of employment. * * * Given the totality of the evidence, the trial court should have fashioned an appropriate remedy to compensate McConnell, not only for lost shareholder profits during his period of employment, but also for the period after his employment, during which he remained a 49% shareholder.
>
> McConnell's losses as a 49% owner of Masury Real Estate * * * were demonstrated with reasonable certainty. * * * McConnell is entitled to $35,770, representing his share of the rents * * *.

*McConnell*, 2015-Ohio-1206, at ¶ 45-46.

**{¶22}** On remand, the trial court partially complied with this court's mandate. The court awarded McConnell $23,071 "for lost profits during his operation of the club," and $23,071 "for lost profits for the remaining six months under his employment contract."

**{¶23}** The trial court did not, however, award McConnell lost profits from Masury Real Estate. Rather, the court construed this court's judgment that "McConnell is entitled to $35,770, representing his share of the rents" as "dicta" which it "decline[d] to follow."

6

{¶24} As noted above, this court's judgment was supported by a majority of the judges and the trial court is without discretion to disregard it.

{¶25} The second and third assignments of error are with merit. The trial court's April 28, 2015 Judgment Entry is reversed with respect to future lost profits from Masury Real Estate. Based on the record, judgment is entered in favor of McConnell in the amount of $35,770 representing "[o]ne-half (1/2) of the rental monies collected or entitled to be collected by Masury Real Estate, Inc." See page 9 of the Amended Complaint.

{¶26} In the fourth and fifth assignments of error, McConnell contends the trial court did not enter a proper award of punitive damages in accordance with this court's previous decision.

{¶27} In the prior appeal, this court held as follows with respect to punitive damages:

> On remand, the trial court should fashion an award of punitive damages, taking into consideration McConnell's testimony regarding attorney fees and the removal of property and equipment from the club building.

*McConnell*, 2015-Ohio-1206, at ¶ 51; *also id.* at ¶ 49 ("[p]unitive damages may [be] awarded based on a claim of breach of fiduciary duty where there is a demonstration of 'actual malice'").

{¶28} The trial court made a pretense of complying with this court's judgment, stating, "in review of the evidence presented, * * * the Appellate Court is correct." Thereupon, the court "award[ed] McConnell $1.00 (ONE DOLLAR) in punitive damages against Schmitt after taking into consideration the totality and credibility of the evidence."

7

**{¶29}** The trial court's purported compliance with this court's judgment may best be described as facetious. Again, we note that a judge has the obligation to recuse himself when his impartiality might reasonably be questioned. *State v. Watkins*, 2d Dist. Clark No. 10CA0088, 2011-Ohio-2979, ¶ 12 (finding that a judge's impartiality could reasonably be questioned where "the trial court judge was unable to reconcile his views with our prior decision").

**{¶30}** In the interests of facilitating judicial economy, preventing further injustice, and obtaining a timely, fair, and final determination, it is the order of this court that this matter be remanded to the administrative judge for reassignment to another judge of the court of common pleas.

**{¶31}** The fourth and fifth assignments of error are with merit. The trial court's April 28, 2015 Judgment Entry is reversed with respect to punitive damages and this cause is remanded with instructions for the lower court, upon reassignment, to comply with this court's prior decision, i.e., to "fashion an award of punitive damages, taking into consideration McConnell's testimony regarding attorney fees and the removal of property and equipment from the club building." Furthermore, on remand and reassignment, a hearing is to be held to determine the amount of attorney fees and litigation expenses incurred by McConnell in the course of these proceedings.

**{¶32}** In cases such as this, where the lower court judge indicates that he "in good conscience" cannot follow the appellate court's judgment on remand, the Ohio Supreme Court and Ohio appellate courts have recognized the authority of the appellate court to order the assignment of another judge to hear the case on remand. *Columbus v. Hayes*, 68 Ohio App.3d 184, 189, 587 N.E.2d 939 (10th Dist.1990) ("[s]ince the trial

8

judge has made it perfectly clear that he does not intend to follow the mandate of this court, it is apparent that any further proceedings in which he participates will prejudice the appellant"); *United States v. Snyder*, 235 F.3d 42, 48 (1st Cir.2000) ("when a judge proves unable to put aside his personal convictions in order to carry out the law * * *, then recusal is of course warranted"); *Nolan*, 11 Ohio St.3d at 3, 462 N.E.2d 410 ("where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law"). Here the lower court judge's comments and token punitive award of one dollar further evidence the judge's unwillingness to follow the judgment of the appellate court on remand.

{¶33} The dissent states that the trial court was entitled to exercise "free reign" on remand because "the lead *opinion* was not joined by a majority of the appellate judges hearing the case" and, so, "did not control," or "dictate the proceedings on remand."

{¶34} Note that the situation in the prior appeal with respect to the positions taken by members of the panel is not unusual. A similar situation existed in *State v. Victor*, 11th Dist. Geauga Nos. 2014-G-3220 and 2014-G-3241, 2015-Ohio-5520. In *Victor*, this court's judgment was that "judgment of the Chardon Municipal Court is reversed and the matter is remanded for further proceedings consistent with this opinion * * * [s]pecifically, upon remand, appellant must be afforded a new trial wherein she is to be represented by counsel, unless she makes a knowing, intelligent, and voluntary waiver thereof." *Id.* at ¶ 37. As in this case, this court's opinion was not supported by a majority of the panel. One judge dissented. The other judge (Wright, J.), who writes a

9

scathing dissent in this matter, concurred in judgment only, declining to "regale" the other members of the panel and the litigants before the court with his "relevant insight" or "heretofore undisclosed knowledge of why the lead opinion is right albeit for alternative reasons."

{¶35} We question whether that judge who concurred in judgment only believed the Chardon Municipal Court had free reign on remand to disregard this court's decision. Could the municipal court have re-convicted Ms. Victor without counsel and/or a knowing, intelligent, and voluntary waiver if the court, in "good conscience," felt unable to comply with the mandate of this court? We also question if all lower courts receiving cases on remand from divided appellate panels enjoy similar reign to act according to the dictates of conscience rather than the judgment of the superior court.

{¶36} The cases cited by the dissent do not support his unique "free reign" theory of proceeding on remand. They stand for the unremarkable proposition that a plurality opinion does not constitute controlling law. *Kraly v. Vannewkirk*, 69 Ohio St.3d 627, 633, 635 N.E.2d 323 (1994). To the extent that these cases cited by the dissent are relevant at all, they support the conclusion that this court's prior judgment states the law of this case. *State v. Weaver*, 4th Dist. Ross No. 93CA1944, 1995 WL 117608, 4 (Mar. 6, 1995) ("[w]hile Judge Grey has previously voted otherwise, he has concurred in judgment only, so there is no majority opinion, only a decision which reverses the result in *this* case") (emphasis sic); *Tahoe-Sierra Preservation Council Inc. v. Tahoe Regional Planning Agency*, 34 F.Supp.2d 1226, 1248 (D.Nev.1999) ("there was no majority opinion in *TSPC I* as to why the dismissal of those particular claims was being upheld * * *[,] [n]onetheless, the dismissal of these claims is the law of the case").

10

{¶37} The precedential value of the opinion is not the relevant issue in the present case. Rather, the issue is the trial court's willful failure to abide by *the judgment* of a superior court duly supported by a majority of judges hearing the case. Furthermore, it is noted that the trial court's ambivalence and confusion regarding the law in this matter has cost the litigants excess time and fees in obtaining a resolution to their dispute.[2]

{¶38} For the forgoing reasons, the Judgment of the Trumbull County Court of Common Pleas is modified. In addition to the $23,071 already awarded "for lost profits during [McConnell's] operation of the club," and $23,071 already awarded "for lost profits for the remaining six months under his employment contract," McConnell is awarded the following:

> $47,580 for the violation of R.C. 1701.37 by Defendant Schmitt; and
>
> $35,770 for lost profits from Masury Real Estate.

{¶39} The judgment of the lower court is reversed with respect to the award of punitive damages and this cause remanded with instructions, upon reassignment, to hold a hearing to determine the amount of reasonable attorney fees and costs incurred by McConnell in the course of this litigation. Finally, it is the order of this court that this matter be remanded to the administrative judge of the Trumbull County Court of Common Pleas for reassignment to another judge of the court of common pleas. The clerk of courts is instructed to serve the administrative judge of the Trumbull County

---

2. This dissent is properly concerned with how time could be "better served" in the resolution of this appeal. One suggestion would be for the judges on the panel, particularly the dissenting judge, to act on the appeal so as to ensure its release within the 210-day period prescribed by the Rules of Superintendence. Sup.R. 40(A)(2) and (3).

Court of Common Pleas with a copy of this court's judgment and opinion. Costs to be taxed against the appellee.


COLLEEN MARY O'TOOLE, J., concurs,

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.


_____


THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

{¶40} I agree with the trial court's conclusion that McConnell's prior appeal did not produce a majority opinion. One jurist wrote the lead opinion reversing and remanding while a second jurist concurred in judgment only without written opinion. I concurred in part and dissented in part and wrote separately explaining the bases for my opinion. *McConnell v. Bare Label Prods., Inc.,* 11th Dist. Trumbull No. 2013-T-0050, 2015-Ohio-1206, ¶54-61. I agreed in part with the lead opinion on one of the three issues previously before us, but otherwise dissented.

{¶41} Article IV, Section 3(B)(2) of the Ohio Constitution, "Organization and jurisdiction of court of appeals," bestows upon Ohio appellate courts the authority to "review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district * * *." Furthermore, "[a] majority of the judges hearing the cause shall be necessary to render a judgment." Ohio Const. Article IV, Section 3(B)(3).

12

{¶42} A "concurring opinion agrees with the judgment of the majority. It might agree with the reasoning as well, but often a concurring opinion will express different [or additional] reasons for the same result." *The Supreme Court of Ohio Writing Manual,* 153 (2d Ed.2013). Black's Law Dictionary defines a concurrence as "agreement; assent" or "[a] separate written opinion explaining such a vote." 309 (8th Ed.2004).

{¶43} Judgment is defined as "[a] court's final determination of the rights and obligations of the parties in a case." *Black's Law Dictionary,* 858 (8th Ed.2004). App.R. 12(A), "Determination," provides in part,

{¶44} "(1) On an undismissed appeal from a trial court, a court of appeals shall do all of the following:

{¶45} "(a) Review and affirm, modify, or reverse the judgment or final order appealed;

{¶46} "(b) Determine the appeal on its merits on the assignments of error set forth in the briefs under App.R. 16, the record on appeal under App.R. 9, and, unless waived, the oral argument under App.R. 21;

{¶47} "(c) Unless an assignment of error is made moot by a ruling on another assignment of error, decide each assignment of error and give reasons in writing for its decision."

{¶48} The jurist concurring in judgment only did not provide an opinion explaining the basis for her decision. Thus, she agreed solely with the lead opinion's ***judgment***, i.e., reverse and remand, but not with the reasoning delineated in the opinion. *The Supreme Court of Ohio Writing Manual*, 2d Edition 2013, explains that "[a]n opinion concurring in judgment only is meant to convey that the writing judge

13

agrees with the result (affirm, reverse, etc.) but not with the reasoning of the majority opinion."

**{¶49}** Typically, an inferior court is not permitted to disregard the mandate of a superior court in a prior appeal in the same case whether the decision is correct or incorrect. *Nolan v. Nolan*, 11 Ohio St.3d 1, 3-4, 462 N.E.2d 410 (1984); *Farm Credit Servs. of Mid-Am. PCA v. Pertuset*, 2014-Ohio-1289, 10 N.E.3d 769, ¶8; *State ex rel. Sharif v. McDonnell,* 91 Ohio St.3d 46, 48, 741 N.E.2d 127 (2001); *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶15. "[T]he decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. * * *

**{¶50}** "* * *

**{¶51}** "In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts. * * * Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law. * * * Moreover, the trial court is without authority to extend or vary the mandate given." (Citations omitted.) *Id.*

**{¶52}** However, our divided opinion issued after McConnell's first appeal left the trial court with no majority opinion to follow making the law of the case doctrine inapplicable. *State v. Weaver*, 4th Dist. Ross No. 93CA1944, 1995 Ohio App. LEXIS 1018, at *11 (Mar. 6, 1995) (noting that an opinion that is joined by a concurrence in judgment only does not produce a majority opinion); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 34 F.Supp.2d 1226, 1247-1248 (D.Nev.1999)

14

(recognizing that the subsequent federal appellate court did not follow the prior appellate decision since there was no majority opinion on the issue because one judge concurred in part and another dissented); *Cox v. Steffes*, 161 N.C.App. 237, 245, 587 S.E.2d 908 (2003), fn1 (noting that the court of appeals lacked a majority opinion since one judge concurred in the result only and the other judge dissented). The Supreme Court of Oklahoma has addressed this issue in a different context and found where "a majority of three panel members of the Court of Civil Appeals is required for a majority decision. * * * *Concurring-in-result and concurring-in-judgment votes may not be counted as votes to form a majority opinion.*" (Emphasis added.) *Estate of Brown v. Brown*, __ P.3d __, 2013 OK 102, *1.

**{¶53}** Because the second appellate judge in McConnell's prior appeal concurred in judgment only without drafting a separate opinion, the majority only agreed that the cause was to be reversed and remanded. "[A]n opinion concurring in the judgment is the functional equivalent of a dissent from the * * * reasoning even if it represents agreement with the result reached in the case." James F. Spriggs II & David R. Stras, *Explaining Plurality Decisions*, 99 Geo. L.J. 515, 520 (2011). And because the lead **opinion** was not joined by a majority of the appellate judges hearing the case, it did not control the proceedings on remand. Ohio Constitution Article IV, Section 3(B)(3). Accordingly, we must examine the issues raised in McConnell's second appeal anew.

**{¶54}** The four cases on point find there was no majority opinion to follow. Citing no case law to the contrary, the majority attempts to find authority for its position in the

foregoing, but its parenthetical holdings only bolster its unfortunate misunderstanding of what concur in judgment only means.

**{¶55}** McConnell first argues that the trial court erroneously held that he was not entitled to an award of statutory forfeiture damages under R.C. 1701.94 and that its decision was beyond the scope of its authority on remand. He alleges that the trial court should have found that Schmitt was a corporate officer charged with keeping corporate records since we previously directed the trial court to either reinstate the December 26, 2012 judgment entry governing statutory fines or recalculate the resulting damages.

**{¶56}** The lead opinion does not dictate the proceedings on remand. Thus, we review the trial court's interpretation and application of the statute de novo and independently review the trial court's legal decisions without deference. *Red Ferris Chevrolet, Inc. v. Aylsworth*, 9th Dist. Wayne No. 07CA0072, 2008-Ohio-4950, ¶4; *State v. Consilio*, 9th Dist. Summit No. 22761, 2006-Ohio-649, ¶4.

**{¶57}** "[W]hen construing a statute, we first must look to the plain language of its provisions[,]" and read the words and phrases in context and according to grammatical rules and common usage. *Morgan v. Community Health Partners*, 9th Dist. Lorain No. 12CA010242, 2013-Ohio-2259, ¶33, citing *Hewitt v. L.E. Myers*, 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795, ¶16. If a statute is clear and unambiguous, a court must apply it as written. *Id.*

**{¶58}** R.C. 1701.94(B) states: "If any officer *charged with one of the duties* specified in division (A) of this section fails to perform such duty after written request by any shareholder, the officer shall be subject to a forfeiture of one hundred dollars, and

16

to the further forfeiture of ten dollars for every day that such default continues, beginning in cases under paragraphs (1), (2), (3), and (4) of division (A) on the same respective days as are provided for in division (A), which amount shall be paid to each shareholder making such request. The right of each shareholder to enforce any such forfeiture is in addition to all other remedies." (Emphasis added.) R.C. 1701.94(A) provides that a corporation that fails to maintain and produce certain corporate records can be subjected to these same forfeiture provisions.

{¶59} To be "charged" with a duty means that one has been "entrust[ed] with a responsibility, duty, or obligation." *Webster's II New College Dictionary*, 188 (1999). Thus, in order for McConnell to recover from Schmitt under R.C. 1701.94(B), he was required to establish first that she was an officer charged with a duty under the statute and second, that she failed to perform the duty after receiving a written request from a shareholder to produce the records.

{¶60} McConnell first sought the corporation's records in January 2008. However, the trial court found that Schmitt was not "charged with" the duty to maintain the company's financial and corporate records, a conclusion supported by the record, as enumerated in its judgment entry:

{¶61} "However, the Court shall review the appropriate measure of damages as instructed for the statutory violation.

{¶62} "In doing so, the Court finds there is absolutely no evidence in the record to suggest the burden of maintaining the corporate records was to rest solely on the shoulders of Schmitt. The Shareholders Agreement executed between Schmitt and McConnell is silent as to this task. R.C. 1701.37(B) states: '[i]f any officer charged with

17

one of the duties specified in division (A) \*\*\* fails to perform such duty after written request \*\*\*, the officer shall be subject to forfeiture of one hundred dollars \*\*\*.'

{¶63} "The predicate to this penalty provision is 'any officer **charged with \*\*\* the duties** \*\*\*.' (Emphasis added.) After an additional thorough review of the record in this matter, the Court finds there is no evidence that Schmitt was so charged with that duty of corporate record keeping.

{¶64} "Furthermore, the evidence in the record suggests quite the opposite. Schmitt was to be a silent partner. She deposited the capital, including the building, to run the business. It was McConnell who was in charge of the operations and the day-to-day (or night-to-night) business.'

{¶65} "McConnell described their arrangement as follows: 'I pretty much was responsible for everything as far as the management, the hiring and firing of everybody, ordering the supplies, getting the kitchen opened, remodeling of the building[.] I was responsible for and did all of the work. \*\*\* She [Schmitt] didn't want anybody to know she was involved in an adult nightclub.'

{¶66} "McConnell continued to describe the partnership: '\*\*\* I took care of running the club and managing the club, and she would put up the money. \*\*\* I would get fifty percent, she would get fifty percent, of the profits.'

{¶67} "To suggest otherwise would be against the manifest weight of the direct evidence before this Court. Therefore, the Court finds the penalty section of R.C. 1701.37 is not applicable as the prerequisite component has not been met. Without any evidence that it was the duty to Schmitt to maintain those records, this Court will not impose a statutory penalty for the failure to do so."

18

**{¶68}** The factual findings and a plain reading of the statute dictate that McConnell's first assignment of error lacks merit. The lead opinion fails to apply the statute as written, and instead imposes a duty where none is established.

**{¶69}** This very issue was before this court in the first appeal. The trial court did not award statutory damages for reasons unrelated to whether Schmitt was charged with the duty to maintain the books. The trial court, therefore, did not determine whether Schmitt was so charged.

**{¶70}** In the first appeal, the lead and I agreed that the trial court's reason for not awarding statutory damages was in error. However, it should be abundantly obvious that unless Schmitt was charged with bookkeeping duties, statutory damages are impermissible. And so I said that, on remand, the trial court would have to determine whether Schmitt was given bookkeeping duties and take it from there. The lead opinion failed to acknowledge the conditional nature of the statute and the need for a factual finding even when pointed out. The lead opinion did not address the "charged with" issue, but instead ordered the trial court to award statutory damages regardless.

**{¶71}** On the merits, the trial court is inarguably right.

**{¶72}** The law of the case "doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results." *Hawley v. Ritley*, 35 Ohio St.3d 157, 160, 519 N.E.2d 390 (1988); *New York Life Ins. Co. v. Hosbrook*, 130 Ohio St. 101, 106, 196 N.E.2d 888 (1935).

**{¶73}** As things stand, Schmitt will be whacked with statutory fines for not producing books she was not required to keep. A court cannot utilize the law of the case doctrine "as an instrument of oppression and injustice." *Gohman v. St. Bernard*,

19

111 Ohio St. 726, 731, 156 N.E. 291 (1924). Thus, the justice or injustice of the prior decision remains material but unaddressed.

**{¶74}** Moreover, as pointed out in McConnell's brief, the prior judgment entry that the lead opinion in *Bare Label Productions, I* sought to reinstate on remand awarded statutory damages against the dissolved corporations, *not* Schmitt. *McConnell*, 2015-Ohio-1206, at ¶17, 38.

**{¶75}** McConnell's second assigned error states the trial court failed to include significant revenue sources in its calculation of lost profits contrary to the clear directive of our prior decision. He specifically challenges the trial court's finding that Club Pink's dance revenue was too speculative to calculate, and as such it was unable to assess lost profits from lap dances.

**{¶76}** Again, because we failed to produce a majority opinion, the trial court was not bound by the lead opinion on remand. Ohio Constitution Article IV, Section 3(B)(3); *State v. Weaver*, 4th Dist. Ross No. 93CA1944, 1995 Ohio App. LEXIS 1018, at *11 (Mar. 6, 1995). However, both of the writing judges agreed that the trial court misconstrued McConnell's testimony in finding that the club's net profits were $3,500 per month. Instead, he testified that the club's monthly *expenses* were $3,500. Thus, two of the three appellate court judges agreed on this narrow issue. *McConnell*, *supra*, at ¶43; *McConnell, supra,* at ¶58 (concur in part, dissent in part). Thus, on remand the trial court had to reassess its lost profit award in McConnell's favor.[3]

---

3. The lead opinion and my dissent did not, however, agree with the scope of the trial court's authority on remand in fashioning the award. The lead opinion provided specific directives to the trial court on remand whereas my concurring in part and dissenting in part opinion found that the recalculation of lost profits was within the trial court's discretion as the trier of fact. The third appellate judge did not indicate any reasoning or opinion. Thus, we failed to provide a majority opinion directing the trial court's actions on remand.

20

**{¶77}** A plaintiff has the burden to prove lost profits as damages in a breach of contract case, and proof of lost profits must be reasonably certain and not based on speculation. *Kinetico, Inc. v. Indep. Ohio Nail Co.*, 19 Ohio App.3d 26, 30, 482 N.E.2d 1345 (8th Dist.1984) citing *Battista* v. *Lebanon Trotting Assn.*, 538 F. 2d 111, 119 (C.A.6, 1976). "[S]ufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶11, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). If the evidence presented at trial is susceptible to more than one interpretation, we are bound to uphold the trial court's decision. *Estate of Barbieri v. Evans*, 127 Ohio App.3d 207, 211, 711 N.E.2d 1101 (9th Dist.1998).

**{¶78}** On remand the trial court concluded that the dance revenue was too speculative to include in its analysis, stating: "McConnell did not provide any numbers or credible evidence whatsoever to support the dance revenue. Susak's testimony was likewise speculative. Furthermore, it was not clear that Susak's knowledge of the dance revenue was derived from first-hand knowledge as he was a self-described door and maintenance man. * * * In addition, the Court finds the general testimony regarding the door and dance numbers were not credible and were not based on any evidence whatsoever other than the self-serving testimony * * *."

**{¶79}** However, the trial court did find that the club's weekly gross income was $4,650, which "equates to monthly gross revenue of $20,150. Less the monthly expenses of $5,500, the total monthly net was $14,650. * * * After expenses of $5,500 per month, the Court finds the monthly net profit was $14,650. McConnell ran the club

21

for six months.   Six months of a monthly net profit at $14,650 equals $87,900. McConnell is entitled to 49% of this profit; or $43,071."

{¶80} After reducing this amount by the $20,000 for Schmitt's initial investment, the trial court awarded McConnell $23,071 for lost profits the first six months and another $23,071 for the remaining six months under his employment contract based in part on McConnell's statement that he personally expected to earn $50,000 in profits the first year of business.

{¶81} Thus, the trial court awarded McConnell an additional $23,071 for lost profits for the six months remaining under his contract for a total lost profit award of $46,142.  Contrary to McConnell's claims, the trial court was not required to award lost profits for lap dances in light of the limited evidence before it, and as such, his second assignment lacks merit.

{¶82} McConnell's third assignment of error has two sub-arguments.  First he claims the trial court erred in failing to award him lost profits for the period of time *beyond* the expiration of his management agreement.  The lead opinion instructed the trial court to compensate McConnell "not only for lost shareholder profits during his period of employment, *but also for the period after his employment, during which he remained a 49% shareholder.*"  (Emphasis added.)  *Id.* at ¶45.  McConnell claims he was not awarded any lost profits for the time period *after* the expiration of his management agreement during which he remained a 49% shareholder and the club continued to exist, consistent with our prior opinion.  Again, the trial court was not obligated to follow the directives of the lead opinion.

**{¶83}** Furthermore, the lead opinion arising from McConnell's prior appeal notes that Schmitt provided the pertinent evidence establishing these damages. She testified that Club Pink was open for a total of three years. Thus, it was open for two years beyond McConnell's one-year management agreement. Schmitt confirmed that the club was open seven nights in the beginning, but for the last year it was only open three nights per week. She confirmed that the club attempted to operate five nights per week after she terminated McConnell, but that it was not sustainable. However, and as found by the trial court on remand, there was no evidence reflecting the number of patrons admitted per night during this time period, and there was nothing introduced evidencing the amount of money earned by the club after the expiration of McConnell's management agreement. Schmitt never testified about the revenue generated. Accordingly, his first sub-argument lacks merit because McConnell did not establish lost profits beyond the expiration of his management agreement.

**{¶84}** McConnell's second sub-argument claims the trial court acted contrary to our prior lead opinion based on its failure to award him 49 percent of the real estate lease payments owed by Club Pink to Masury Real Estate. The prior lead opinion on this issue concludes that McConnell "is entitled to $35,770, representing his share of the rents ([$88,000 - $15,000] x 0.49)." *Id.* at ¶46. My concurrence in part and dissent in part disagreed, and thus the trial court had free reign.

**{¶85}** Upon reviewing the evidence, the trial court concluded:

**{¶86}** "Any damages for lost profits from Masury Real Estate were not sufficiently proven at the trial in this matter and are indeed too remote to speculate.

23

Therefore, the Court finds McConnell did not meet his burden of proof as to any lost profits due to him for future lost profits from Masury Real Estate."

{¶87} Accordingly, the trial court did not err and was within its discretion in concluding that McConnell did not meet his burden of proof. Thus, McConnell's second sub-argument under his third assignment of error lacks merit and his third assigned error lacks merit in its entirety.

{¶88} McConnell's fourth assignment of error claims the trial court erred by failing to award him 49 percent of the value of the personal property that Schmitt removed from the club prior to the sale of the building. Specifically, he alleges that Schmitt wrongfully removed bar furniture and kitchen appliances and equipment in advance of the auction thereby greatly reducing the price obtained.

{¶89} Schmitt initially purchased the property in 2004 for Bare Label, including all of its contents, for approximately $15,000. The building had been a VFW hall, and Schmitt's purchase included the existing kitchens and "all the equipment." McConnell described her purchase as a "turnkey business without a liquor license."

{¶90} According to Bare Label's appointed receiver, this same real property, including the personal property contained therein, had a total estimated value of $36,600 in advance of the auction in 2009. Schmitt purchased the property at auction for $17,500 in 2009. McConnell filed an objection to the sale based on Schmitt's removal of the personal property from the building. The trial court nevertheless confirmed the sale. *McConnell*, *supra*, at ¶9-11. The proceeds from the sale, minus various expenses, were deposited with the court in escrow.

24

**{¶91}** "The elements of a conversion claim include (1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages. If the defendant came into possession of the property lawfully, the plaintiff must prove two additional elements to establish conversion: (1) that the plaintiff demanded the return of the property after the defendant exercised dominion or control over the property; and (2) that the defendant refused to deliver the property to the plaintiff." (Citations omitted.) *6750 BMS, L.L.C. v. Drentlau,* 8th Dist. Cuyahoga No. 103409, 2016-Ohio-1385, 62 N.E.3d 928, ¶28. "To prevail on a claim of conversion, the plaintiff must prove by a preponderance of the evidence that the defendant wrongfully exercised dominion and control over the plaintiff's property to the exclusion of, or inconsistent with, the plaintiffs' rights." *Lanzalaco v. Lanzalaco,* 8th Dist. Cuyahoga No. 97767, 2012-Ohio-4053, 976 N.E.2d 309, ¶31, citing *Joyce v. Gen. Motors Corp.,* 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990).

**{¶92}** "The measure of damages in a conversion action is the value of the converted property at the time it was converted." *Allied Erecting & Dismantling Co., Inc. v. City of Youngstown*, 151 Ohio App.3d 16, 2002-Ohio-5179, 783 N.E.2d 523, at ¶62, quoting *Tabar v. Charlie's Towing Serv., Inc.*, 97 Ohio App.3d 423, 428, 646 N.E.2d 1132 (1994). "An award of damages must be shown with a reasonable degree of certainty and in some manner other than mere speculation, conjecture, or surmise." *Elias v. Gammel*, 8th Dist. Cuyahoga No. 83365, 2004-Ohio-3464, at ¶25. Damages are not speculative when they can be "computed to a fair degree of probability." *Allied, supra,* at ¶65.

**{¶93}** "In assessing whether a [decision] is against the manifest weight of the evidence, this Court examines the entire record, '"weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [verdict] must be reversed and a new trial ordered."' [*State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997)] quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In other words, we review the verdict to determine whether the [trier of fact] lost its way in concluding that 'the *greater amount of credible evidence,* offered in a trial, [supported] one side of the issue rather than the other.' (Emphasis in original.) *Thompkins* at 387, 678 N.E.2d 541." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2016-Ohio-7461, 64 N.E.2d 1018, ¶12 citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶17.

**{¶94}** McConnell contends he established his conversion claim via uncontroverted evidence and that the trial court's denial of this claim is against the manifest weight of the evidence. I disagree. Although the trial court did not delineate its reasoning for rejecting McConnell's conversion claim, the evidence supports the conclusion that he failed to establish this claim via credible evidence. A trial court has broad discretion upon determining the credibility of evidence. *State* v. *DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus (holding that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.")

26

**{¶95}** First, McConnell did not establish that the personal property that Schmitt removed belonged to him at the time of the conversion. Instead, McConnell testified that the furniture and kitchen equipment removed belonged to the company. Second, McConnell failed to offer specific evidence identifying the personal property that Schmitt removed. Although McConnell generally identified the missing items as including bar stools, tables and chairs, and kitchen appliances and coolers, he did not provide any details outlining what property was scheduled to be included in the sale. He likewise did not offer evidence establishing the condition or quality of the missing items.

**{¶96}** Third, McConnell failed to establish the value of the items converted with a reasonable degree of certainty*.* He estimated the total value of the missing items at $34,000. This figure included all of the items that McConnell and Schmitt added to the business as well as the equipment that came with the purchase of this former VFW hall. McConnell explained that his estimate was based on his experience in purchasing bar furniture and used kitchen appliances in the past. However, he offered no breakdown of this estimate or detailed price list. He likewise did not offer expert opinion or any independent documentation supporting his broad opinion as to the value of the property. Furthermore, McConnell's estimated value vastly differed with the receiver's estimate that all of the real and personal property had a combined estimated value of $36,000.

**{¶97}** Thus, McConnell's fourth assignment is meritless because the trial court's decision is not against the manifest weight of the evidence.

**{¶98}** McConnell's fifth and final assignment alleges the trial court erred in failing to award him attorney fees and in awarding him only one dollar in punitive damages.

27

**{¶99}** The decision to award punitive damages is within a trial court's discretion and is permissible in a breach of fiduciary duty case upon a showing of actual malice. Hastings v. J.E. Scott Corp., 2d Dist. Miami No. 2003 CA 32, 2004-Ohio-1821, ¶39; *Blair v. McDonagh*, 177 Ohio App.3d 262, 2008-Ohio-3698, 894 N.E.2d 377, ¶65 (1st Dist.). "'Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.'" Id. quoting Preston v. Murty, 32 Ohio St.3d 334, 336, 512 N.E.2d 1174 (1987).

**{¶100}** "The amount of punitive damages rests largely within the discretion of the finder of fact. *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 40, 543 N.E.2d 464. An award of punitive damages will generally not be overturned unless it bears no rational relationship or is grossly disproportionate to the amount of compensatory damages awarded such that the award appears to be the result of passion or prejudice." (Citation omitted.) *Davis v. Sun Ref. & Mktg. Co.*, 109 Ohio App.3d 42, 60, 671 N.E.2d 1049 (2d Dist.1996).

**{¶101}** McConnell does not argue that the trial court's punitive damage award lacks a rational relationship or that it is grossly disproportionate to the amount of compensatory damages in this case. Instead, he claims a greater award was warranted in light of the overwhelming evidence of Schmitt's vindictiveness, spite, and malice.

**{¶102}** However, the trial court considered McConnell's testimony regarding attorney fees and Schmitt's removal of equipment from the building and took "into consideration the totality and credibility of the evidence." Thereafter, it awarded

28

McConnell one dollar in punitive damages. This minimal punitive damage award was apparently based on the trial court's concern as to the nominal amount of proof establishing McConnell's claims. The trial court noted concern throughout its decision that his testimony was self-serving and unsubstantiated. Consequently, the trial court did not abuse of discretion upon awarding only one dollar in punitive damages. *Id.*

{¶103} Last, the directives by the lead opinion relative to damages following the first appeal were untenable in light of the overwhelming number of unresolved factual issues.

{¶104} Contrary to the majority's conclusion, the trial court did not defy what it believed to be a binding appellate decision. Instead, it conscientiously considered the hand it was dealt, and concluded that the splintered opinion did not constitute a binding majority. The trial court spells out its conclusion to this effect in the first paragraph of its decision.

{¶105} Based on its conclusion that there was no majority opinion, with which I agree, the trial court then proceeded to address the issues on remand consistent with the law, not the lead opinion.

{¶106} The majority finds that the trial court was defiant and disobedient. The trial court, however, provided a good faith basis for its actions. That the trial court highlighted fatal flaws in the lead opinion was unavoidable. While there is room for disagreement on this issue, the majority's conclusion that the trial court was derelict is unnecessary and unwarranted.

**{¶107}** This court has now issued a majority opinion. And the trial court is now duty bound to follow the majority opinion, however flawed. There is no reason to believe the trial court will not do so. Accordingly, this case need not be reassigned.

**{¶108}** I dissent.