[Cite as *Weglicki v. Rachitskiy*, 2022-Ohio-254.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

DAVID J. WEGLICKI, et al.,

        Plaintiffs-Appellants,

- v -

VALERIY A. RACHITSKIY,

        Defendant-Appellee.

|

**CASE NO. 2021-G-0010**

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2019 P 000714

---

**O P I N I O N**

Decided: January 31, 2022
Judgment: Reversed and remanded

---

*Kyle B. Melling*, Lowe Scott Fisher Co., LPA, 1660 West Second Street, 610 Skylight Office Tower, Cleveland, OH 44113 (For Plaintiffs-Appellants).

*Thomas M. Coughlin, Jr.* and *Jonathon M. Angarola*, Ritzler Coughlin & Paglia, Ltd., 1360 East Ninth Street, Suite 500, Cleveland, OH 44114 (For Defendant-Appellee).

MARY JANE TRAPP, J.

{¶1} Appellants, David J. Weglicki ("Mr. Weglicki") and his wife, Laura Weglicki ("Mrs. Weglicki") (collectively, the "Weglickis"), appeal the judgment of the Geauga County Court of Common Pleas that awarded summary judgment to appellee, Valeriy A. Rachitskiy ("Mr. Rachitskiy"). Following a bicycling accident in which Mr. Weglicki suffered a concussion and a broken pelvis, the Weglickis filed suit alleging Mr. Rachitskiy acted in a negligent, reckless, wanton, and/or intentional manner when he stopped suddenly, causing Mr. Weglicki, who was cycling behind him in a pace line, to crash into him. Mrs. Weglicki filed a claim for loss of consortium.

{¶2} The Weglickis raise two assignments of error on appeal, contending that the trial court erred as a matter of law in granting summary judgment because (1) there is a genuine issue of material fact whether Mr. Rachitskiy's actions were reckless separate and apart from the risks inherent in recreational group bicycling, and (2) the trial court abused its discretion in excluding the affidavit and report of the Weglickis' expert sua sponte.

{¶3} The trial court's judgment entry is silent as to its consideration – and possible exclusion - of the Weglickis' rebuttal evidence on summary judgment. Failure of the trial court to thoroughly examine all appropriate materials filed by the parties before ruling on a motion for summary judgment constitutes reversible error. Mindful of the maxim that the summary judgment exercise is not a "little trial" but a mechanism designed to quickly dispose of claims without any merit, we reverse and remand for the trial court to consider the evidentiary material the Weglickis submitted and determine whether they met their reciprocal burden on summary judgment to raise a genuine issue of material fact.

{¶4} The judgment of the Geauga County Court of Common Pleas is reversed, and the matter is remanded for further proceedings in accordance with this opinion.

**Substantive and Procedural History**

{¶5} The Weglickis filed a complaint in the Geauga County Court of Common Pleas, alleging two claims for relief: (1) Mr. Rachitskiy acted in a negligent, reckless, wanton, and/or intentional manner when he stopped suddenly while he and Mr. Weglicki were cycling in a pace line, causing Mr. Weglicki to crash into him, and (2) a loss of

2

consortium on behalf of Mrs. Weglicki. Mr. Rachitskiy filed an answer, asserting several affirmative defenses, including primary assumption of risk.

### *Mr. Rachitskiy's Motion for Summary Judgment*

{¶6} Mr. Rachitskiy filed a motion for summary judgment, contending that the doctrine of primary assumption of risk applied and that he did not act recklessly or intentionally to injure Mr. Weglicki. Mr. Rachitskiy pointed to his deposition, in which he testified that he dropped his left hand to show he was stopping. He further argued that a collision is a foreseeable risk when riding in a group of cyclists. A partial transcript of Mr. Rachitskiy's deposition was attached to his motion for summary judgment, as well as his affidavit. He also separately filed the complete deposition.

{¶7} In his deposition, Mr. Rachitskiy testified that he and Mr. Weglicki were members of the Cleveland Touring Club. The Cleveland Touring Club would organize rides several times a week, which typically lasted an average of two hours and covered a distance of approximately 40 miles (riding at an average pace of 20 mph).

{¶8} On the day of the incident, the Cleveland Touring Club held a ride beginning in Chagrin Falls. Mr. Rachitskiy and Mr. Weglicki, who had ridden together before, were in the "B group" along with several other riders, including Peter Snitzer ("Mr. Snitzer") and the group leader, Craig W. Connors ("Mr. Connors"). Mr. Connors gave general instructions before the ride, including the admonition to "[s]tay together as a group, wait for the people who behind [sic] and keep it at the same pace. Keep a single line." The riders cycled in a "pace line," which Mr. Rachitskiy described as "one person, one rider after another in real close proximity." The purpose of a pace line is based on

3

aerodynamics, i.e., allowing faster riding with less energy expenditure by helping the riders behind the pace leader avoid air resistance.

{¶9} On the return ride, Mr. Rachitskiy decided to break away from the group and ride directly to his home instead of returning to the starting location. The group was riding westbound on Bell Street, a few miles from the starting location. On similar past rides, Mr. Rachitskiy typically broke away from the group and turned right onto Hemlock Rd. On the day of the incident, it was blocked due to construction so he decided to turn right on Fairview Rd. He began to slow down, cognizant of the people who were riding behind him. After Mr. Snitzer passed him on the right, Mr. Rachitskiy decided to come to a complete stop to let the other riders pass before he turned right. When he stopped, Mr. Weglicki hit him from behind on Mr. Rachitskiy's left side. Mr. Rachitskiy's wrist and ribs were injured in the collision.

{¶10} Before slowing down, Mr. Rachitskiy dropped his left-hand "to show that I was stopping," which is a customary sign for slowing down. He did not call out a verbal warning to the other riders. He believes he learned the hand signals used by riders to communicate in group cycling from the Cleveland Touring Group.

### The Weglickis' Brief in Opposition to Summary Judgment

{¶11} In opposition, the Weglickis contended the risk that led to Mr. Weglicki's injuries was not a foreseeable risk of cycling, i.e., the risks of cycling do not include a fellow rider riding ahead in a pace line to stop suddenly without warning. He further argues that even if the primary assumption of risk doctrine applied due to the inherent dangers of cycling in a pace line, Mr. Rachitskiy's action were reckless because he failed to adequately signal prior to abruptly stopping.

4

Case No. 2021-G-0010

### *Trial Court Excludes Evidentiary Materials the Weglickis Submitted in Opposition to Summary Judgment*

{¶12} Attached to the Weglickis' brief in opposition were partial, court-reporter certified depositions of Mr. Weglicki, Mr. Rachitskiy, Mr. Snitzer, and Mr. Connors, as well as an affidavit and expert report of Edward M. Stewart ("Mr. Stewart"). As will be more fully explained below, the trial court did not consider this rebuttal evidence.

{¶13} In relevant part, Mr. Weglicki testified in his deposition that the incident occurred at approximately 8:30 p.m. on Bell Street in South Russell Township. He estimated they were riding at a speed of 30 to 35 mph. Mr. Weglicki was riding about two feet behind Mr. Snitzer when Mr. Snitzer swerved to avoid hitting another bike that was "basically going very slow or stopped." He remembered Mr. Snitzer calling out to Mr. Rachitskiy before he lost consciousness when he collided with Mr. Rachitskiy. Mr. Weglicki testified that when a biker wants to alert other riders of his intention to stop, he will hold his hand, typically the left, down and out, along with giving a verbal signal.

{¶14} Mr. Connors testified that Mr. Rachitskiy often turned off route while on similar rides due to the proximity to his house, and he recalled that it was "common" for Mr. Rachitskiy to verbally inform the group of his intention to leave on the return ride. Mr. Connors explained that during rides the cyclists would have to regroup to make sure everyone was focused and staying together as much as possible.

{¶15} In his deposition, Mr. Snitzer testified that on previous rides, Mr. Rachitskiy frequently rode home instead of returning to the starting point. On that particular day he could not recall whether Mr. Rachitskiy expressed that intention. He explained that he was riding in front of Mr. Weglicki and behind Mr. Rachitskiy with a distance of about one to two feet between them when Mr. Rachitskiy started riding very slowly with no warning.

5

He swerved to the right, and yelled, "Val," to get his attention. Mr. Weglicki came from behind crashing into Mr. Rachitskiy on the left. He did not see Mr. Rachitskiy signal and estimated their speed was approximately 30 mph.

{¶16} Mr. Stewart, the Weglickis' expert, attested in his affidavit that he reviewed depositions, the accident site, and an incident police report; and that his opinions were made to a reasonable degree of cycling certainty based upon his investigation and analysis, as well as his education, training, and experience. He explained that among cyclers riding in a pace line, communication initiates with the lead rider. Further, the only person who will see the hand signal is the person immediately behind the signaler because of the close proximity of the riders. Because of this lack of visual cues, the rider also has the responsibility to verbally call out what is happening.

{¶17} In Mr. Stewart's opinion, Mr. Rachitskiy "erred" by not using standard signals and/or verbal communication to indicate his intention to turn. In addition, he opined Mr. Rachitskiy had ample time in the two-hour ride to inform someone that he would be turning on Fairview Rd. instead of his usual turn-off, Hemlock Rd., to go home. A more usual practice for someone "dropping off a route" would be to first fall back to the rear of the group and to tell at least one other rider that he would be leaving. Then, when he moved to leave, he would not disrupt the flow of the group.

### The Trial Court Grants Summary Judgment to Mr. Rachitskiy

{¶18} In the judgment entry granting Mr. Rachitskiy's motion for summary judgment, the trial court noted that "[o]n September 22, 2020, Mr. Rachitskiy's deposition was filed. Although parts of various depositions were attached to the Opposition, no other depositions were filed. * * * The affidavit, curriculum vitae, and expert report of Edward

6

M. Stewart, was attached to the Opposition. Because Mr. Stewart relied on facts not in evidence, his expert report cannot be considered."

{¶19} The trial court based its findings of fact solely on Mr. Rachitskiy's deposition. As to its conclusions of law, the trial court first found that the primary assumption of risk doctrine applied to the Weglickis' negligence claim and that Mr. Rachitskiy owed no duty to Mr. Weglicki. Further, Mr. Rachitskiy met his initial burden on summary judgment by establishing that (1) he and Mr. Weglicki were participants in bicycling, a sporting event in which collisions are an inherent risk; and (2) Mr. Weglicki assumed all the risks inherent in the sport of bicycling. The trial court found the Weglickis failed to provide rebuttal evidence.

{¶20} Secondly, as to intentional/reckless/wanton misconduct, the trial court found that stopping is a foreseeable, customary part of bicycling and that Mr. Rachitskiy's evidence showed he intended to stop in a safe manner, allow the bicyclists behind him to safely pass, and then turn towards his home. Mr. Rachitskiy met his initial burden by establishing no harm, intentional or otherwise, was intrinsically tied to his conduct. Again, the trial court found the Weglickis failed to provide rebuttal evidence.

{¶21} Similarly, the trial court found there was no evidence to show that Mr. Rachitskiy acted recklessly because he established that (1) he acted carefully to avoid causing an accident and (2) there was no evidence to show that Mr. Rachitskiy recognized stopping would result in a significantly higher risk of the occurrence of serious harm. Thus, Mr. Rachitskiy met his initial summary judgment burden, and the Weglickis failed to provide rebuttal evidence. Furthermore, there was no evidence of wanton misconduct

7

since Mr. Rachitskiy showed not only that he owed no duty, but that he acted carefully and tried to avoid injuring anyone, and the Weglickis failed to provide rebuttal evidence.

{¶22} Lastly, the trial court found that Mrs. Weglicki's derivative claim for loss of consortium necessarily failed.

{¶23} The Weglickis raise two assignments of error for our review:

{¶24} "[1.] The trial court erred as a matter of law in granting summary judgment in favor of defendant-appellee Valeriy A. Rachitskiy.

{¶25} "[2.] The trial court erred as a matter of law in excluding plaintiff's expert affidavit and report out of hand."

## Summary Judgment Standard of Review

{¶26} Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Holik v. Richards*, 11th Dist. Ashtabula No. 2005-A-0006, 2006-Ohio-2644, ¶ 12, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party. *Id.*, citing Civ.R. 56(C). Further, the standard in which we review the granting of a motion for summary judgment is de novo. *Id.*, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

{¶27} Accordingly, "[s]ummary judgment may not be granted until the moving party sufficiently demonstrates the absence of a genuine issue of material fact. The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record which demonstrate the absence of a genuine

8

issue of fact on a material element of the nonmoving party's claim." *Brunstetter v. Keating*, 11th Dist. Trumbull No. 2002-T-0057, 2003-Ohio-3270, ¶ 12, citing *Dresher* at 292. Once the moving party meets the initial burden, the nonmoving party must then set forth specific facts demonstrating that a genuine issue of material fact does exist that must be preserved for trial, and if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id.*, citing *Dresher* at 293.

{¶28} "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In *Dresher v. Burt*, the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party

9

fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798." *Welch v. Ziccarelli*, 11th Dist. Lake No. 2006-L-229, 2007-Ohio-4374, ¶ 40.

{¶29} The court in *Dresher* went on to say that paragraph three of the syllabus fails to account for the burden Civ.R. 56 places upon a moving party. The court, therefore, limited paragraph three of the syllabus in *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991) to bring it into conformity with *Mitseff. Id.* at ¶ 41.

{¶30} "The Supreme Court in *Dresher* went on to hold that when *neither* the moving nor nonmoving party provides evidentiary materials demonstrating that there are no material facts in dispute, the moving party is not entitled to judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the basis for the motion, 'and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' *Id.* at 296. (Emphasis added.)" *Id.* at ¶ 42.

{¶31} In their first assignment of error, the Weglickis contend the trial court erred in awarding summary judgment to Mr. Rachitskiy because there is a genuine issue of material fact as to whether a cyclist riding in a pace line who stops suddenly causing a crash is a reckless risk that is not inherent in the recreational sport of group cycling. In their second assignment of error, they contend the trial court abused its discretion in excluding Mr. Stewart's report because he based his opinion on facts not in the record.

{¶32} In addition to the exclusion of the Weglickis' expert report, it appears the trial court failed to consider the certified, partial depositions attached to the Weglickis'

10

brief in opposition to summary judgment. Because we find the trial court erred in failing to consider the Weglickis' rebuttal evidence and affirmatively determine whether the evidence raised a genuine issue of material fact as to whether Mr. Rachitskiy's actions were outside of the inherent risks of group cycling dispositive, we will address the Weglickis' assignments of error together.

**Recreational Sports Negligence**

{¶33} In *Marchetti v. Kalish*, 53 Ohio St.3d 95, 559 N.E.2d 699 (1990), syllabus, the Supreme Court of Ohio set forth the recreational or sports-activity exception to liability for negligence, stating that "[w]here individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either 'reckless' or 'intentional' as defined in Sections 500 and 8A of the Restatement of Torts 2d."

{¶34} "'[The *Marchetti*] rule has its genesis in the doctrine of primary assumption of the risk and is based on the rationale that a participant to a sporting event or recreational activity accepts the risks associated with the sport or activity.'" *Getsy v. Eastham*, 11th Dist. Trumbull No. 2008-T-0032, 2008-Ohio-6767, ¶ 22, quoting *Pope v. Willey*, 12th Dist. Clermont No. CA2004-10-077, 2005-Ohio-4744, ¶ 8, citing *Gentry v. Craycraft*, 101 Ohio St.3d 141, 2002-Ohio-379, ¶ 10-11. "Underlying the doctrine of primary assumption of risk 'is the notion that certain risks are so inherent in some activities that they cannot be eliminated. * * * The doctrine rests on the fiction that plaintiff has tacitly consented to the risk, thereby relieving defendant of any duty owed to him.'" *Id.*, quoting *Collier v. Northland Swim Club*, 35 Ohio App.3d 35, 37, 518 N.E.2d 1226 (10th Dist.1987).

11

Case No. 2021-G-0010

{¶35} There is no doubt that there are inherent risks in group cycling, especially when riding in a pace line where riders are only separated by a few feet and cycling at high speeds. For instance, in *Wolf v. Kaplan*, 8th Dist. Cuyahoga No. 110104, 2021-Ohio-2447, the Eighth District found the record failed to demonstrate a cycler in the cycling portion of a triathlon acted intentionally or recklessly when he cut in front of the appellant, causing her to crash. *Id.* at ¶ 26, 28. The Eighth District noted that there was nothing about the collision that was so exceptional or outside the realm of the inherent risk of participating in a triathlon that the general rule of separation between a sporting event and a tort action should be vitiated. *Id.* at ¶ 27. Likewise, in *Moser v. Ratinoff*, 105 Cal.App.4th 1211, 130 Cal.Rptr.2d 198 (2003), the court found that a cycler's movements toward the right side of the road, which caused her to collide with her fellow bicycler may have been negligent, but they were not intentional, wanton or reckless, or conduct outside the range of ordinary activity involved in the sport. *Id.* at 1222-1223.

{¶36} The error here is the trial court's failure to consider the evidentiary quality rebuttal evidence when considering whether Mr. Rachitskiy's behavior was within the bounds of the inherent risks of group cycling or whether it constituted reckless conduct. The trial court's judgment entry is silent as to whether it considered the certified partial deposition transcripts attached to the Weglickis' brief in opposition to Mr. Rachitskiy's motion for summary judgment. But in finding that the Weglickis failed to provide rebuttal evidence, it is safe to say that the deposition testimony offered by the Weglickis was not considered. Nor did the trial court offer any rationale for excluding Mr. Stewart's expert report, which was supported by the expert's affidavit and also attached to the brief in opposition.

Case No. 2021-G-0010

{¶37} The decision regarding the admission of evidence lies within the sound discretion of the trial court and will not be disturbed. *Rilley v. Brimfield Twp.*, 11th Dist. Portage No. 2009-Ohio-0036, 2010-Ohio-5181, ¶ 56. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004). However, it appears the trial court did not consider the depositions because its judgment entry merely stated that "parts of various depositions were attached to the Opposition, no other depositions were filed."

{¶38} Civ.R. 56(C) sets forth the type of evidence which may be considered on summary judgment. Specifically, the court may consider pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action. "No evidence or stipulation may be considered except as stated in this rule." *Id.* The proper procedure for introducing evidentiary material not specifically authorized by Civ.R. 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Civ.R. 56(E). *Buzzard v. Pub. Emps. Retirement Sys. of Ohio*, 139 Ohio App.3d 632, 636, 745 N.E.2d 442 (10th Dist.2000).

{¶39} The best practice in the summary judgment exercise is to separately file a complete, certified deposition transcript signed by the deponent, unless signature was waived at the time of the deposition or by the deponent's failure to respond to a request for review and signature when the transcript is prepared, in addition to attaching pertinent portions of the transcript to a motion or brief in opposition to summary judgment with the appropriate affidavit. However, the failure to file such transcript is not fatal.

13

{¶40} Further, a trial court may consider evidence other than the evidence specified in Civ.R. 56(C) where no objection has been raised. *Davila v. Simpson*, 2018-Ohio-946, 108 N.E.3d 628, ¶ 26 (5th Dist.). *See also Alliant Food Servs., Inc. v. Powers*, 8th Dist. Cuyahoga No. 82189, 2003-Ohio-3262, ¶ 16-17 (Because no objection was raised over the defendant's partial deposition transcripts on summary judgment and the plaintiff relied upon them in opposition, it cannot be held that the trial court erred by considering them).

{¶41} "'Civ.R. 56(C) places a mandatory duty on a trial court to thoroughly examine all appropriate materials filed by the parties before ruling on a motion for summary judgment. The failure of a trial court to comply with this requirement constitutes reversible error.'" *A-M.R. v. Columbus City School Dist.*, 2015-Ohio-3781, 41 N.E.3d 489, ¶ 15 (10th Dist.), quoting *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 604 N.E.2d 138 (1992), paragraph one of the syllabus.

{¶42} In *A-M.R.*, the Tenth District reversed the trial court's award of summary judgment because the trial court's decision provided no indication that it examined deposition testimony or any of the other materials attached to the appellant's memorandum in opposition to summary judgment. *Id.* The court explained that when a court fails to consider a deposition properly before it in rendering summary judgment, it commits error which is, per se, prejudicial and renders the judgment erroneous as a matter of law. *Id.* While even in the absence of objections, the trial court has discretion to consider evidence of types not specifically addressed in Civ.R. 56(C), depositions are specifically included among the permitted types of evidence listed. *Id.* at ¶ 18, Civ.R. 56(C). Further, and most fundamentally, Civ.R. 32(A)(4) permits the introduction of an

14

excerpt unless the other party objects, in which case all parts of the deposition relevant to the excerpt must also be introduced. *Id.*

{¶43} The Weglickis' partial deposition transcripts were properly certified by a court reporter. Certified, partial depositions constitute sufficient quality evidentiary material pursuant to Civ.R. 56(C). *See A-M.R.* at ¶ 18; *Rilley, supra*, at, ¶ 66 (documents submitted in opposition to a motion for summary judgment must be sworn, certified, or authenticated by affidavit to be considered by the trial court in determining whether a genuine issue of material fact exists for trial). Further, Mr. Rachitskiy failed to move to strike the materials attached to the brief in opposition or otherwise offer an objection and thus waived any possible error in consideration of that evidence under Civ.R. 56(C). *A-M.R.* at ¶ 16.

{¶44} As previously noted, it appears the trial court did not consider the depositions. The trial court found the Weglickis failed to submit any rebuttal evidence after finding that Mr. Rachitskiy met his initial burden as the moving party on summary judgment and awarded Mr. Rachitskiy summary judgment on this basis. Even though an appellate court reviewing an award of summary judgment must conduct its own examination of the record, if the trial court does not consider all the evidence before it, an appellate court does not sit as a reviewing court, but becomes, in effect, a trial court. *Peterson v. Martyn*, 10th Dist. Franklin No. 17AP-39, 2018-Ohio-2905, ¶ 51; *Murphy* at 360. Accordingly, the failure of the trial court to thoroughly examine all appropriate materials filed by the parties before ruling on a motion for summary judgment constitutes reversible error. *Id.*

15

{¶45} As to the Weglickis' expert report by Mr. Stewart, the trial court found that it could not be considered because Mr. Stewart relied on facts not in evidence and cited to *Rilley*, without identifying what those "facts not in evidence" were. In *Rilley*, we determined that the expert report was properly excluded from consideration on summary judgment because no evidence was offered as to the expert's qualifications, and none of the documents upon which the expert based his formulation of the events of the night of the incident were attached to the affidavit, authenticated by affidavit, or in the record. *Id.* at ¶ 62.

{¶46} In forming his expert opinion, Mr. Stewart reviewed the depositions attached to the Weglickis' brief in opposition to summary judgment, as well as an incident police report, and personally inspected the scene of the crash. He also reviewed Mr. Rachitskiy's deposition transcript, which was filed in the action.

{¶47} While police reports contain hearsay, portions of a report may be admissible under the public records hearsay exception, particularly in the summary judgment exercise. *See, e.g., Muncy v. Am. Select Ins. Co.*, 129 Ohio App.3d 1, 5, 716 N.E.2d 1171 (10th Dist.1998). The fact that the expert reviewed a police report does not, standing alone, support the exclusion of his report and affidavit, when other evidentiary quality materials underlie his report and affidavit.

{¶48} Even if the report is completely inadmissible, the deposition testimony in this record could potentially support a different conclusion from Mr. Rachitskiy's, thus raising a genuine issue of material fact.

{¶49} Accordingly, we find the assignments of error have merit, and we reverse and remand for the trial court to consider whether the Weglickis' rebuttal evidence raised

16

a genuine issue of material fact as to whether Mr. Rachitskiy acted recklessly by slowing down and then coming to a complete stop while riding in a pace line during a group bicycle ride.

{¶50} The judgment of the Geauga County Court of Common Pleas is reversed, and the matter is remanded for further consideration in accordance with this opinion.

CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.