[Cite as *State ex rel. Yost v. Osborne Co., Ltd.*, 2022-Ohio-2627.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO ex rel.<br>DAVE YOST, OHIO<br>ATTORNEY GENERAL,<br><br>　　　　Plaintiff-Appellee,<br><br>　　- v -<br><br>OSBORNE CO., LTD., et al.,<br><br>　　　　Defendants-Appellants. | CASE NO.  2021-L-020<br><br>Civil Appeal from the<br>Court of Common Pleas<br><br>Trial Court No. 2014 CV 000166 |

## O P I N I O N

Decided: August 1, 2022
Judgment: Affirmed

*Dave Yost*, Ohio Attorney General; *Gregg H. Bachmann* and *Catherine A. English*, Assistant Attorneys General, Environmental Enforcement Section, 30 East Broad Street, 25th Floor, Columbus, OH 43215 (For Plaintiff-Appellee).

*Richard N. Selby, II* and *Grant J. Keating*, Dworken & Bernstein Co., LPA, 60 South Park Place, Painesville, OH 44077 (For Defendants-Appellants).


THOMAS R. WRIGHT, P.J.

{¶1}　Appellants—Osborne Co., Ltd. and the Executors of the Estate of Jerome T. Osborne—appeal from the trial court's judgment entry imposing a civil penalty for violations of Revised Code Chapter 6111, Ohio's Water Pollution Control Laws.  The judgment is affirmed.

{¶2} The East Branch Chagrin River ("River") is a rare, cold water stream the state of Ohio seeks to protect. Between 2001 and 2007, pursuant to an agreement with the Village of Kirtland Hills ("Village"), Defendants Osborne Co., Ltd. ("Osborne Co.") and Jerome T. Osborne ("Osborne") dredged the River twenty-four times. Defendants placed eight spoil piles of dredged material, each eight to twenty feet high, in the riverbed and along the riverbank on property owned by either the Village or Osborne, with the exception of one pile placed on property owned by the Oliva family ("Oliva Pile"). Neither Defendants nor the Village applied to the Ohio Environmental Protection Agency ("OEPA") or the Army Corps of Engineers for a permit for this activity. The OEPA discovered the activity in July 2007 and ordered Defendants to cease. The Defendants ceased all activity in the River, but the spoil piles remained until the Village removed all but the Oliva Pile in November 2013. The Oliva Pile has not been removed.

{¶3} The extensive procedural history of this matter is recounted in two previous opinions of this court: *State ex rel. DeWine v. Osborne Co., Ltd.*, 2018-Ohio-3109, 104 N.E.3d 843 (11th Dist.) ("*Osborne I*") and *State ex rel. Yost v. Osborne Co., Ltd.*, 2020-Ohio-3090, 154 N.E.3d 183 (11th Dist.) ("*Osborne II*").

{¶4} The trial court found Defendants jointly and severally liable for violating R.C. 6111.04(A) and 6111.07(A) by dredging the River and leaving the spoil piles in place, thereby causing pollution of the River. The trial court ordered injunctive relief in favor of the state of Ohio and imposed civil penalties against Defendants for dredging ($180,000.00) and for the spoil piles ($224,240.00). This court reversed the judgment in part, holding that dredging the River was not a violation of the specific statutes pleaded in the complaint. *Osborne I* at ¶ 47. We remanded the matter to the trial court "to make

2

a finding specifically related to the violations alleged in the complaint [i.e., discharge of materials into the East Branch Chagrin River without permits, as provided in R.C. 6111.04(A) and R.C. 6111.07(A)] and thereafter limit any civil penalty and injunctive relief to the consequences of that conduct." *Id.* at ¶ 72.

{¶5} On remand, the trial court considered only the findings in its original decision that related to the spoil piles and pollution of the River, incorporated those findings into its decision, and again imposed a civil penalty of $224,240.00 for that conduct ($80/day of violations). This court reversed the judgment in part, holding that "the trial court abused its discretion when assessing the civil penalty against [Defendants] by not properly applying the *Dayton Malleable* factors." *Osborne II* at ¶ 71, citing *State ex rel. Brown v. Dayton Malleable, Inc.*, 1 Ohio St.3d 151, 438 N.E.2d 120 (1982). We remanded the matter to the trial court for further proceedings "solely related to the assessment of the civil penalty after considering the appropriate factors supported by the record." *Osborne II* at ¶ 73.

{¶6} On remand, the trial court explicitly considered the *Dayton Malleable* factors and again imposed a civil penalty of $224,240.00 for the spoil piles and pollution. The trial court calculated the penalty as follows:

> Based on the *Dayton Malleable* factors as discussed above, the court finds that a $100/day civil penalty would be appropriate for the actual harm and great risk of harm caused by Defendants' placing of dredged material in and near the River, Defendants' indifference, and the extraordinary enforcement costs incurred by the State, but that the amount should be reduced to $80/day due to the Eleventh District's finding of lack of evidence of economic benefit gained by the violation. Accordingly, the court imposes a civil penalty of $80/day for the 2,301 days (7/13/07 to 11/1/13) that the Stockpiles remained along the River.

3

Applying the *Dayton Malleable* factors to the 1,004 days between when the Village removed all of the piles except for the Oliva Pile and the date of [the trial court's] first order, the court finds that the risk of harm was reduced because there was less material that could fall into the River, and that the remaining factors are unchanged. The court further finds that this reduced risk of harm was due solely to the actions of the Village, and not to any action taken by Defendants, and therefore this court will only reduce the civil penalty by 50%. Accordingly, the court imposes a civil penalty of $40/day for the 1,004 days (11/2/13 to 7/29/16) that the Oliva Pile remained along the River.

This court imposes a civil penalty of $224,240.00, consisting of $184,080.00 for the first period ($80/day * 2,301 days) and $40,160.00 ($40/day * 1,004 days) for the second period.

{¶7} From this decision, Appellants advance one assignment of error:

The trial court abused its discretion in assessing a civil penalty against Defendants in the amount of $224,240.

{¶8} "Assessing an environmental civil penalty lies within the trial court's discretion. As long as the amount assessed is [equal to or] less than the statutory maximum, it is within the trial court's discretion to fix that amount." *State ex rel. DeWine v. Deer Lake Mobile Park, Inc.*, 2015-Ohio-1060, 29 N.E.3d 35, ¶ 41 (11th Dist.), citing *State ex rel. Ohio Atty. Gen. v. Shelly Holding Co.*, 135 Ohio St.3d 65, 2012-Ohio-5700, 984 N.E.2d 996, ¶ 23 and *Dayton Malleable*, 1 Ohio St.3d at 157-158. Thus, this court will not reverse the amount of the civil penalty imposed absent an abuse of the trial court's discretion. An abuse of discretion occurs when a trial court fails to "'exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004); *see also Dayton*

4

Case No. 2021-L-020

*Malleable* at 157 (a trial court abuses its discretion by assessing a penalty that is "unreasonable, arbitrary, or unconscionable").

{¶9} "The General Assembly intended to use economic sanctions to deter violations of R.C. Chapters 6109 and 6111, and thereby to promote the goal of clean water in the state of Ohio, when it provided for substantial monetary penalties." *Deer Lake* at ¶ 42, citing *Dayton Malleable* at 157. Specifically, "[a]ny person who violates section 6111.07 of the Revised Code shall pay a civil penalty of not more than ten thousand dollars per day of violation." R.C. 6111.09(A).

{¶10} It is undisputed that the spoil piles remained along the riverbank for a total of 2,301 days and that the Oliva Pile had not been removed as of the date of the trial court's first order, which was an additional 1,004 days. The maximum potential civil penalty for 3,305 days in violation of R.C. 6111.07(A), at $10,000.00 per day, is in excess of $33 million. The trial court assessed a penalty of $100/day, mitigated to $80/day, for the first 2,301 days and $40/day for the remaining 1,004 days, which resulted in a total civil penalty of $224,240.00—far less than the statutory maximum.

{¶11} In making this determination on remand, the trial court reapplied the *Dayton Malleable* factors: "(1) the harm or risk of harm posed to the environment by the violations, (2) the violator's level of recalcitrance, defiance, or indifference to the law, (3) the economic benefit gained by the violation, and (4) the extraordinary enforcement costs incurred by the state." *Deer Lake* at ¶ 44, citing *Dayton Malleable*, 1 Ohio St.3d at 153-155. Appellants do not take issue with the enforcement costs incurred by the state.

{¶12} The first issue presented for review is whether the trial court failed to properly assess Defendants' level of recalcitrance, defiance, or indifference to the law.

5

Case No. 2021-L-020

**{¶13}** The dissent contends that "the trial court * * * made findings contrary to this court's holding and instructions on remand" in *Osborne II*. In *Osborne II*, this court stated:

> Appellants additionally argue, with respect to the second factor, that defendants did not act in bad faith or in defiance of or indifference to the law. They claim that penalizing them for failing to remove the piles is, in essence, penalizing them for failing to reach an agreement with the Ohio EPA. While this is not an unreasonable argument under the circumstances, we do not find that the record supports this conclusion. In assessing defendants' level of recalcitrance, the trial court did not merely rely on the fact that they refused to settle. The trial court also found that "the defendants were aware of the requirement to at least obtain a National Pollutant Discharge Elimination System (NPDES) permit yet failed to do so"; and "defendants showed a disregard to the preservation of a scenic, cold water habitat and a disregard to those (the Ohio EPA and ODNR) who sought to protect and remediate the river." Nothing in the record suggests, however, that defendants acted in bad faith or indifference towards the environmental laws *when they agreed to perform work in the river on behalf of the Village*. Further, the trial court failed to consider that defendants ceased all activity in the river as soon as they were informed by the EPA that it was not permitted. This all should have been factually relevant to the trial court's determination of defendants' level of bad faith, defiance, or indifference to the law, *yet it was not mentioned in the court's analysis*. On remand, the trial court shall also expressly consider these facts when applying the second factor of *Dayton Malleable*.

(Emphasis added.) *Osborne II* at ¶ 67.

**{¶14}** On remand, the trial court acknowledged our instruction and found as follows:

> The fact that Defendants agreed to perform work in and around a State waterway, and chose to place piles of dredged materials where they could and did fall back into the River, without any attempt to comply with State or Federal environmental laws (which at the time were already well-established), is evidence of (at a minimum) indifference. In addition, * * * this court does not find that Defendants should

6

be rewarded with a decreased civil penalty because they chose not to further violate environmental laws after receiving a notice from the Army Corps of Engineers warning them that '[a]ny additional impacts will be considered a knowing and willing violation of Federal law' and subject them to civil penalties. Accordingly, the court finds that Defendants acted with indifference.

{¶15} The dissent specifically contends that the trial court's finding of indifference is contrary to our statement that "[n]othing in the record suggests * * * that defendants acted in bad faith or indifference towards [sic] the environmental laws when they agreed to perform work in the river on behalf of the Village." *Id.* The dissent fails to consider this sentence in context and reads it unnecessarily narrow. The opinion refers only to the time defendants agreed with the Village to perform the work; it says nothing about defendants' overall conduct after that agreement was made. The dissent further contends that the trial court's finding that defendants "should not be rewarded" for ceasing activity is a rejection of this court's determination that the cessation of activity was "factually relevant." *Id.* However, we did not instruct the court to afford this fact any certain weight on remand. Rather, we instructed the court to expressly consider the fact in its analysis, which certainly did not preclude the trial court from reaching its conclusion on remand. Contrary to the dissent's view, we hold that the trial court's weighing of the facts and ultimate finding on this factor was neither arbitrary nor unreasonable.

{¶16} Appellants argue the trial court's analysis relates to the Defendants' conduct when actually performing work in the river and creating the spoil piles rather than for the days the spoil piles remained on the riverbank. In other words, they argue that any indifference to the law occurred prior to the OEPA's cease and desist order, not after, because the spoil piles remained in place as long as they did due to Defendants'

7

compliance with the cease and desist order. While this may be an accurate contention as it relates to the recalcitrance factor, it was not an abuse of discretion for the trial court to calculate a penalty for each day the consequences of Defendants' prior indifference to the law polluted the River. With respect to a violation of R.C. 6111.07(A)—here, via violations of R.C. 6111.04(A)—the civil penalty statute imposes strict liability, to wit: "[a]ny person who violates section 6111.07 of the Revised Code shall pay a civil penalty of not more than ten thousand dollars per day of violation." R.C. 6111.09(A). Thus, the statute requires imposition of a civil penalty, not for each day of indifference, but for each day Defendants caused pollution of the River *or* placed *or* caused to be placed any material in a location where it caused pollution of the River. *See* R.C. 6111.04(A).

{¶17} Appellants' first issue is not well taken. The trial court did not fail to properly assess Defendants' level of recalcitrance, defiance, or indifference to the law.

{¶18} The second issue presented for review is whether the trial court failed to properly assess the harm or risk of harm imposed to the environment by the violations. Appellants argue that the state failed to meet its burden of establishing that the continued existence of the spoil piles created any significant harm or risk of harm to the river habitat. This argument was previously raised and rejected in *Osborne II*, where we noted that the state is not required to prove actual harm, as merely threatening environmental health is an actionable offense, and that the record is replete with evidence of actual and threatened harm resulting from placing the dredged material along the riverbank. *Osborne II*, 2020-Ohio-3090, at ¶ 68. Nevertheless, we instructed the trial court on remand to expressly consider the harm and threat of harm specifically caused by this activity as opposed to the dredging. *Id.* at ¶ 69. Appellants contend that the trial court

8

simply pointed to isolated portions of the record unrelated to the concerns expressed by this court. We disagree. The trial court did address our concerns on remand, finding as follows:

> Defendants placed thousands of cubic yards of dredged material along the riverbank or in the middle of the River. Ed Wilk, the 401 Coordinator for OEPA, testified that this was 'one of the most detrimental cases' he has seen because of the stockpiling, and that it 'was amazing to see the magnitude and the amount of material that was there.' The State presented uncontroverted evidence at trial that some unquantified amount of dredged material fell back into the River. Daniel Bogoevski, an environmental specialist with OEPA, testified that sediment that enters a waterway can be harmful because it may have picked up foreign materials (e.g. phosphorus); and it irritates the gills of fish. Paul Anderson, a former OEPA Environmental Specialist II, testified that the fish and other inhabitants of the River were affected by sediment resettling in the River, and that this contributed to the River's poor 'Quality of Habitat Evaluation Index' score. The court finds that Defendants created a great risk of harm, and an unquantifiable amount of actual harm, from the dredged material that was placed back in the River and on the banks where it could fall back into the River.

{¶19} Accordingly, we conclude the trial court did not fail to properly assess the harm or risk of harm imposed to the environment by the spoil piles and pollution of the River. Appellants' second issue is not well taken.

{¶20} The third issue presented for review is whether the trial court abused its discretion when it failed to implement a net reduction in the civil penalty based on this court's conclusion in *Osborne II* that Defendants had not received an economic gain for the work performed. We held that the trial court's finding that Defendants gained an economic benefit from violating the law was arbitrary and unreasonable due to a lack of evidence, and we instructed the trial court to reconsider the civil penalty. *Osborne II* at ¶

9

66. On remand, applying this court's holding, the trial court applied a $20/day reduction due to the lack of economic benefit. Appellants argue that this reduction was illusory because the trial court had originally imposed a civil penalty of only $80/day for the same time period and then increased it on remand to $100/day in order to arrive at the same penalty it had originally imposed after the $20/day reduction—$224,240.00.

{¶21} We note that the case was reassigned to a new judge on remand, due to the initial judge's retirement. Even in criminal matters when a penalty is increased following a successful appeal, a presumption of vindictiveness does not apply if resentencing is held before a different judge. *See, e.g., State v. Mitcham,* 11th Dist. Ashtabula No. 92-A-1693, 1993 WL 164713, *4 (Apr. 23, 1993) ("when a second judge imposes a more severe penalty, there is no presumption of vindictiveness because in such scenario, the vindictiveness is highly speculative"); *State v. Johnson*, 2d Dist. Montgomery No. 23297, 2010-Ohio-2010, ¶ 6 ("no presumption of vindictiveness exists 'where a different trial judge, who is not required to preside over a new trial, imposes a harsher sentence, and explains on the record the reasons for the sentence'"). "This is because there is little risk under these circumstances of a trial court's interest in self-vindication or of discouraging what it views as meritless appeals." (Citation omitted.) *State v. Ingels*, 1st Dist. Hamilton Nos. C-180469, C-180470 & C-180471, 2020-Ohio-4367, ¶ 12. Appellant provides no case law or other support for the proposition that the second judge's imposition of $100/day as opposed to the initial judge's imposition of $80/day was an abuse of discretion. As such, we find the third issue not well taken.

10

{¶22} The trial court did not abuse its discretion in assessing a civil penalty against Defendants in the amount of $224,240. Appellants' sole assignment of error is without merit.

{¶23} The judgment of the Lake County Court of Common Pleas is affirmed.


JOHN J. EKLUND, J., concurs,

MATT LYNCH, J., dissents with a Dissenting Opinion.

_____


MATT LYNCH, J., dissents with a Dissenting Opinion.

{¶24} I dissent from the majority's decision to uphold the penalty awarded against the appellants as there were critical flaws in the assessment of the penalty. The concerns raised by this court in the prior appeal were not adequately remedied on remand and findings were made contrary to this court's ruling. The penalty amount was demonstrably arbitrary and, thus, an abuse of discretion, as the lower court ordered appellants to pay the precise penalty previously assessed while recognizing that one of the factors utilized to justify that prior amount was inapplicable. The stated consideration of the factors and corresponding findings, particularly in relation to the harm caused by appellants' actions, are not supported by the record. Given the foregoing, and the multiple remands following appeal that have failed to remedy these concerns, vacating the penalty in its entirety is the proper remedy.

{¶25} A significant error in this case arises from the fact that the trial court, while reducing a portion of the penalty on remand for the previous errant finding that appellants

11

gained an economic benefit from the violation, still arrived at a penalty that was exactly the same amount as was ordered prior to remand. It found a penalty of $100 per day should be assessed but then reduced this amount to $80 a day due to this court's finding of a lack of evidence of an economic benefit. The prior award of the trial court had been $80 per day with the finding that there was evidence of such benefit. The court, although presented with no new evidence and asked only to clarify and state its consideration of the *Dayton Malleable* factors, increased a portion of the penalty amount in what can only be construed as an attempt to offset the amount of the reduction necessitated by this court's finding on appeal. This fails to give the appellants the proper consideration and weighing of the factors that is warranted in this type of matter. Such a concern is especially troublesome in this type of case, where the penalty is significant, and places a large financial burden on the estate of Jerome Osborne, who passed away during the course of the litigation, making the penalty of limited effectiveness. It must be emphasized that a civil penalty is not intended to have a "truly devastating impact" on a party as this would "[improperly] tend more towards confiscation than mere deterrence." *United States v. Detrex Chem. Industries, Inc.*, 393 F.Supp. 735, 738 (N.D.Ohio 1975); *see State ex rel. Brown v. Dayton Malleable*, 1 Ohio St.3d 151, 159, 438 N.E.2d 120 (1982) (Holmes, J., concurring in part and dissenting in part) ("It is universally agreed that the purpose of the civil penalty provisions of R.C. Chapter 6111 and similar provisions enacted in other states in accordance with the Federal Water Pollution Control Act is remedial and not punitive."). Not only does the penalty lack deterrent effect where the offending party has passed away, a penalty can hardly be an effective deterrent to others or serve a remedial purpose when the inconsistent, unpredictable, and unjustified application of the relevant

12

Case No. 2021-L-020

factors occurs. *See Dayton Malleable* at 157 (a civil penalty is intended to have a deterrent effect as "an example to others"). Ordering an identical penalty while recognizing that there is less evidence to support this penalty is not consistent with the foregoing purposes.

{¶26} The majority emphasizes the criminal law principle that a presumption of vindictiveness does not apply when a different judge resentences a defendant on remand, observing the new judge assigned to this matter. While recognizing that there are concerns about the punitive nature of the punishment as addressed above, the conclusion that the penalty ordered on remand was issued in error is also based on considerations apart from concerns of vindictiveness, particularly that the trial court abused its discretion. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making'" and occurs when its decision is "arbitrary." *Weglicki v. Rachitskiy*, 2022-Ohio-254, 183 N.E.3d 1260 (11th Dist.), citing *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004); *Martin v. Taylor*, 11th Dist. Lake No. 2021-L-046, 2021-Ohio-4614, ¶ 26. It is evident that this penalty is arbitrary and constituted an abuse of discretion since the court acted in a manner that was unreasonable and did not exercise sound and legal decision-making. *Estate of Brunger*, 11th Dist. Portage No. 2018-P-0003, 2018-Ohio-4474, ¶ 9.

{¶27} In determining the penalty here, the trial court applied the factors set forth by the Supreme Court of Ohio in its *Dayton Malleable* opinion. The factors are "(1) the harm or risk of harm posed to the environment by the violations, (2) the violator's level of recalcitrance, defiance, or indifference to the law, (3) the economic benefit gained by the violation, and (4) the extraordinary enforcement costs incurred by the state." *State ex re.*

13

*DeWine v. Deer Lake Mobile Park*, 2015-Ohio-1060, 29 N.E.3d 35, ¶ 44 (11th Dist.), citing *Dayton Malleable*, *supra*, at 153-155.

{¶28} Further, the *Dayton Malleable* factors must be weighed and applied in a manner consistent with the facts in the record. *See State ex rel. Rogers v. Elbert*, 180 Ohio App.3d 284, 2008-Ohio-6746, 905 N.E.2d 235, ¶ 61-65 (9th Dist.) (remanding to the trial court in part due to its failure to consider the deterrent effect of the penalty as well as harm caused to the environment); *State ex rel. Yost v. Osborne Co., Ltd.*, 2020-Ohio-3090, 154 N.E.3d 183, ¶ 71 (11th Dist.) ("the trial court abused its discretion when assessing the civil penalty against appellants by not properly applying the *Dayton Malleable* factors"). Appellate courts cannot rubber stamp decisions made by the trial court if the analysis of the *Dayton Malleable* factors is perfunctory or contrary to the record.

{¶29} The record demonstrates that the lower court did not consider the factors in a meaningful way as was this court's intent when remanding the matter. The lower court's decision to manipulate the penalty amount to avoid the consequences of this court's prior decision demonstrates a failure to give genuine consideration to the necessary factors and shows a lack of sound and reasonable decision-making, which is the hallmark of an abuse of discretion. While "[t]he trial court [has] discretion to impose civil penalties * * *, it was required to exercise its discretion within the appropriate parameters." *State ex rel. Rogers* at ¶ 60. This includes consideration of all necessary factors and imposition of fines that are consistent with those factors. *Id.* at ¶ 61-65. There can be no legitimate consideration of the factors if the penalty is exactly the same when an entire factor is found inapplicable. If a party did not have a financial gain from its actions as here, it

14

follows that they should receive a different penalty because the remedial nature of the penalty would differ. The court's actions fall squarely within the definition of an arbitrary decision, which is "one made 'without consideration of or regard for facts [or] circumstances.'" *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, 97 N.E.3d 474, ¶ 12, citing *Black's Law Dictionary* 125 (10th Ed.2014).

{¶30} The arbitrary nature of the lower court's decision, and, therefore, its abuse of discretion, is further evidenced by its consideration of the facts in relation to alleged damages caused by the existence of the piles. As ordered on remand, the lower court was to consider the distinction between "the harm caused by the pollution [from the piles] as opposed to the dredging." *Osborne* at ¶ 69. As this writer observed in the prior appeal, the evidence contained in the record did not distinguish in a clear manner the harms caused by dredging versus discharge from the piles. The record simply lacks evidence to allow for a penalty justified solely by the existence of the piles placed along the river, leaving the court's judgment again unsupported by evidence. The court's conclusion is not supported by findings that fairly show significant harm related solely to the piles themselves.

{¶31} The statement of Wilk, the EPA coordinator, emphasizing the "magnitude and amount of material" in the piles does not demonstrate harm, nor does evidence that some dirt may have fallen into the river. The trial court pointed to testimony that sediment entering a waterway "can be harmful" if it picks up foreign materials and because it can cause harm to the habitat of plants and animals in the body of water. Such testimony is not specific to this case and is speculative. The testimony of EPA specialist Anderson also fails to support the finding of environmental harm. While the trial court points to the

15

poor quality of habitat score, fully examining this testimony actually shows it provides support for a conclusion that the only potential harm caused here was from the dredging, not the mere existence of the piles by the river. Anderson's testimony demonstrated that conditions had improved after the dredging was completed. In testifying about the Qualitative Habitat Evaluation Index, he noted that while an initial test in 2007 found a "very poor score" in a portion of the river, it had improved to the "borderline of good" within just a few months. Anderson further noted that the Index of Biological Integrity score, used to identify fish populations, had also improved upon testing just a year after the dredging ceased. This compels the conclusion that dredging was the cause of any significant environmental harm rather than the piles since, although the piles were still present years later, the river conditions had improved shortly after the dredging activity ceased.

{¶32} As is demonstrated by the record, the testimony presented by the EPA related almost entirely to concerns with altering the river environment by dredging, as well as removing rocks and natural features, impacting animal habitats, all of which are unrelated to the piles and cannot be considered given our past determination that appellants "cannot be held liable for excavating the material out of the river." *State ex rel. DeWine v. Osborne Co., Ltd.*, 2018-Ohio-3109, 104 N.E.3d 843, ¶ 47 (11th Dist.). It should further be acknowledged that the "pollutant" complained of here is merely soil that originated from the river bottom. The irony should not be missed that the remediation demanded by the EPA was to destroy the piles and place the dirt, the "pollutant," back in the river.

{¶33} The majority also holds that it was not error to consider indifference of the

16

appellants as a factor, even though their indifference occurred prior to the cease and desist order, and to continue to penalize them each day the piles remained in place. It observes that the statutory language sets forth only that the penalty applies per day of violation: "[a]ny person who violates section 6111.07 of the Revised Code shall pay a civil penalty of not more than ten thousand dollars per day of violation." R.C. 6111.09(A). However, reviewing this statutory language alone oversimplifies the issue as it addresses only the fact that a penalty applies and not the amount of the penalty, which is the main point of contention here. Pursuant to *Dayton Malleable*, in evaluating the proper civil penalty, "[t]he totality of the circumstances and the specific facts of each case guide" the exercise of the court's discretion. *State ex rel. Cordray v. Evergreen Land Dev., Ltd.*, 7th Dist. Mahoning Nos. 15 MA 0115 and 15 MA 0116, 2016-Ohio-7038, ¶ 45; *see also State ex rel. Brown v. Howard*, 3 Ohio App.3d 189, 444 N.E.2d 469 (10th Dist.1981), paragraph one of the syllabus ("[t]he determination of the amount of penalty, authorized by R.C. 6111.09, to be imposed, is left to the 'informed discretion' of the trial court based on the totality of the evidence in each case"). As observed above, perfunctory consideration of these factors is simply not sufficient to comply with *Dayton Malleable* or to order a proper penalty and does not constitute reasonable decision-making. In this case, the appellants were unable to move the piles after the cease and desist order and the court should have taken this into consideration as a relevant factor when determining its overall penalty after weighing of the required factors.

{¶34} Significantly, the trial court's judgment failed to comply with the directives issued in this court's opinion relating to bad faith. In our prior opinion, this court determined that "[n]othing in the record suggests * * * that defendants acted in bad faith

17

or indifference towards the environmental laws when they agreed to perform work in the river on behalf of the Village." *Osborne*, 2020-Ohio-3090, at ¶ 67. Nonetheless, the trial court determined that indifference *was* demonstrated when the defendants agreed to perform work in a waterway while failing to comply with environmental laws. This is contrary to this court's finding regarding the lack of evidence on this issue. This court also held that "the trial court failed to consider that defendants ceased all activity in the river as soon as they were informed by the EPA that it was not permitted" and this was "factually relevant to the trial court's determination of defendants' level of bad faith, defiance, or indifference to the law." *Id.* In response, the trial court made a finding that the defendants "should not be rewarded" for choosing not to further violate environmental laws after receiving notice of the violation. Although this court found the ceasing of activity to be factually relevant, the lower court essentially rejected this finding. Rather than reweighing the evidence taking into account the foregoing determinations by this court, the trial court instead made findings contrary to this court's holding and instructions on remand. The majority should acknowledge that the trial court is obligated to determine the penalty in compliance with our decision and failure to do so is an unacceptable and reversible error. *Nolan v. Nolan*, 11 Ohio St.3d 1, 462 N.E.2d 410 (1984), syllabus ("an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case"); *see also Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 10 ("[b]y refusing to comply with the mandate of an appellate court, [the judge] violated [a] basic judicial duty"); *McConnell v. Bare Label Prods., Inc.*, 2017-Ohio-9325, 104 N.E.3d 9, ¶ 16 (11th Dist.) (reversing the trial court's judgment due to its failure to comply with appellate court's order on remand).

18

Case No. 2021-L-020

{¶35} Furthermore, the argument in favor of a finding of bad faith/indifference is overstated. In addition to the fact that the appellants were unable to remove the piles, it continues to appear that the lower court is influenced by the alleged indifference in relation to violating the law while dredging. It is highly questionable that the appellants believed placing piles of dirt near a river would cause significant environmental harm. Such a point is only highlighted by the foregoing discussion of the EPA's failure to present any evidence of substance that proves such harm when contrasted with the harm caused by dredging. It appears the court had difficulty separating the two harms given the extensive amount of testimony presented in relation to the harm of the dredging. If the EPA, as an environmental expert, was unable to find evidence to demonstrate that appellants' conduct caused harm, how could appellants be expected to be aware of the alleged risks of their conduct?

{¶36} It should be reiterated that there is a strong implication here that appellants are being penalized not based on the *Dayton Malleable* factors but due to their failure to settle with the EPA. It cannot be overemphasized that the Village of Kirtland Hills, by choosing to accede to the demands of the EPA, was able to avoid any penalty whatsoever. This is especially concerning given that the evidence indicates appellants were not provided the same opportunity to reach such a deal and avoid a penalty; the city was offered an opportunity to complete restoration work in exchange for a waiver of penalty, which offer was not made to appellants.

{¶37} For the foregoing reasons, I respectfully dissent and would hold that the ordered penalty is arbitrary, unsupported by the record, and an abuse of discretion. There is an overall lack of justification for the penalty and the amount awarded per day is

19

randomly determined by the trial court rather than being based on specific factors or detriment to the environment. Those facts that were stated to justify its decision were either unsupported by the record or improperly considered given this court's prior holding, and, thus, consideration of such facts was unreasonable. The evidence presented by the EPA is lacking in its ability to demonstrate any justification for a penalty and vacating the remedy would be the appropriate outcome in this case. *See State ex rel. Cordray v. U.S. Technology Corp.*, 5th Dist. Tuscarawas No. 11AP060025, 2012-Ohio-855, ¶ 10-15 (since the lower court's assessment of the penalty for environmental protection violations was "not supported by the evidence," the appellate court entered judgment in a lesser amount).